983 P.2d 208

**MUTUAL OF ENUMCLAW INSURANCE COMPANY, a Washington corporation, Plaintiff–Counterdefendant–Respondent,**

v.

**John PEDERSEN and Jeff Pedersen, Defendants–Counterclaimants,**

and

**Wendy Pedersen and Kate Alexia Pedersen, a minor, by and through her mother and natural guardian, Wendy Pedersen, Defendants–Counterclaimants–Appellants.**

No. 24524.

Supreme Court of Idaho,
Boise, February 1999 Term.

July 13, 1999.

Hall, Friedly and Ward, Mountain Home, for appellants. Jay R. Friedly argued.

Benoit, Alexander, Sinclair, Harwood and High, L.L.P., Twin Falls, for respondent. John K. Butler argued.

KIDWELL, Justice.

Wendy Pedersen, and her minor daughter Kate, appeal from summary judgment in an action for declaratory relief which denied them benefits pursuant to a homeowners insurance policy. The district court held that Mutual of Enumclaw Insurance Company had no liability under the policy because the claimants fit within "insured" and residency exclusions contained in the policy. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Jeff and Wendy Pedersen resided in Utah until early 1996. Kate Pedersen was born to Jeff and Wendy on April 4, 1994. In March of 1996, Jeff Pedersen gained employment in the Boise area. At that time he moved into his parents' home in Parma, Idaho. There he lived with his father, John Pedersen, and his mother who was ill with cancer. During this time, Jeff would travel back and forth to Utah to visit with his family every other weekend. On May 3, 1996, Jeff's mother died. At the funeral John asked Jeff and his family to move into his home to alleviate his loneliness. Jeff moved his family into John's house on June 6, 1996. They brought with them a bed for one daughter, a crib for the other daughter, a computer, a swing set and clothing. The rest of their household goods were stored.

The home of John Pedersen consists of a basement and a main floor. The main floor has three bedrooms, a living room, a kitchen, a dining room and two full baths. The basement contains two bedrooms, a family room, a laundry room and a half bath.

Jeff and his family occupied the two bedrooms in the basement of John's home. Although they prepared their meals in the upstairs kitchen, they would return downstairs to dine. Jeff and Wendy bought and prepared their food separately from John.

Jeff and Wendy had registered their vehicles under John's address in Parma, from the time they were married through November 1996. Their bank account was set up using John's address and their income tax returns indicated they were Idaho residents for the time they had spent at Jeff's father's house. While living at John's house, Jeff and Wendy used John's automobile which they later made arrangements to purchase.

On November 13, 1996, Jeff and Wendy made a down payment of $500.00 on a building lot in a Nampa subdivision. They picked out the lot and made the decision to build in Nampa one month before they made the deposit.

On November 16, 1996, Jeff severely injured his daughter Kate by driving over her foot with a riding lawn mower. This accident occurred at John's house in Parma.

John owned a homeowners insurance policy through Mutual of Enumclaw Insurance Company (Mutual). In relevant part, the policy provides:

*COVERAGE E—Personal Liability*

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the insured is legally liable. Damages include prejudgment interest awarded against the insured.

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

*COVERAGE F—Medical Payments to Others*

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices, and funeral services. This coverage does not apply to you or regular residents of your household except residence employees. As to others, this coverage applies only:

1. to a person on the insured location with the permission of an insured[.]

*SECTION II EXCLUSIONS*

2. Coverage E—Personal Liability does not apply to:

f. bodily injury to you or an insured within the meaning of part a. or b. of "insured" as defined.

3. Coverage F—Medical Payments to Others, does not apply to bodily injury:

d. to any person, other than a residence employee of an insured, regularly residing on any part of the insured location.

*DEFINITIONS*

3. "[I]nsured" means you and *residents of your household* (emphasis added) who are:

a. your relatives; or

b. other persons under the age of 21 and in the care of any person named above. . . .

d. with respect to any vehicle to which this policy applies:

(1) persons while engaged in your employ or that of any person included in 3a or 3b above; or

(2) other persons using the vehicle on an insured location with your consent.

Wendy Pedersen made a claim to Mutual on Kate Pedersen's behalf against Jeff and John for Kate's injuries and medical expenses. This claim was based on the theory that John, as a homeowner, was liable for the injuries which occurred on his premises, and that Jeff was liable as an insured under the policy for causing those injuries.

On June 6, 1997, Mutual responded to the claim by filing a complaint for declaratory relief, alleging that it had no duty to defend or indemnify either Jeff or John. In its complaint, Mutual asserted that a controversy existed between it and each of the defendants. Wendy filed an answer and a counterclaim. On July 30, 1997, Jeff and John also filed an answer and counterclaim. Mutual filed timely replies to the counterclaims.

Mutual then filed a motion for summary judgment on November 28, 1997. Mutual's motion was supported by depositions of John, Jeff and Wendy Pedersen.

After oral argument on January 14, 1998, the district court entered an order granting

summary judgment; it held that Jeff, Wendy and Kate were residents of John's household and therefore were not entitled to coverage.

Wendy and Kate filed a notice of appeal on March 3, 1998. However Jeff and John did not timely file an appeal. Jeff and John filed a petition for intervention in appeal on June 4, 1998, but their petition was denied, and they are not parties to this appeal. Mutual raises the issue of legal standing to maintain this appeal by Wendy and Kate.

## II.

### STANDARD OF REVIEW

■ On appeal from the grant of a motion for summary judgment from a declaratory judgment proceeding, this Court employs the same standard as used by the district court originally ruling on the motion. *McKay v. Owens*, 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997). On review, summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party, and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. *Bonz v. Sudweeks*, 119 Idaho 539, 541 808 P.2d 876, 878 (1991). If reasonable people could reach different conclusions or draw conflicting inferences from the evidence, the motion must be denied. *Id.* However, if the evidence reveals no disputed issues of material fact, the trial court should grant the motion for summary judgment. *Farm Credit Bank v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994).

## III.

### ANALYSIS

A. **Mutual Is Not Liable Pursuant To The Homeowners Policy For Kate's Injuries. Kate Was A Resident Of John's Household And Regularly Resided At The Insured Location, Which Are Policy Exclusions.**

Here we are asked to interpret certain provisions in a homeowners insurance policy.

This type of policy is generally designed to protect a homeowner, or a named insured under the policy, from liability claims arising from injuries on their property. This broad protection objective gives rise to legal challenges as to what and who fall within the scope of the contracted protection. This Court has recently analyzed a similar, if not identical, homeowners insurance policy. Various contractual interpretations have been set forth which are applicable to this case. *Mutual of Enumclaw Ins. Co. v. Roberts (Roberts)*, 128 Idaho 232, 235, 912 P.2d 119, 122 (1996).

■ As this Court has stated several times, it is clear that insurance contracts are contracts of adhesion and are not typically subject to negotiations between the parties, thus any ambiguity must be construed most strongly against the insurer. *Id.* (citing *Kromrei v. AID Ins. Co.*, 110 Idaho 549, 551, 716 P.2d 1321, 1323 (1986)). However, where the policy language is clear and unambiguous, coverage must be determined in accordance with the plain meaning of the words used. *Id.* When language in the policy is ambiguous, "we must determine what a reasonable person would have understood the language to mean." *Id.* Unless a contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage, as opposed to the meaning derived from legal usage, in order to effectuate the intent of the parties. *AID Ins. Co. v. Armstrong*, 119 Idaho 897, 900, 811 P.2d 507, 510 (Ct.App.1991).

■ Wendy and Kate advocate that the term "household" is an ambiguous term that should be construed against the insurer to provide coverage for Kate's injuries. While this Court has previously determined that the term "household" is not ambiguous, *Roberts*, 128 Idaho at 235–36, 912 P.2d at 122–23, the determination of whether persons living together actually comprise a household is a determination that must be evaluated on a case by case basis. This Court has not established a precise formula for the determination of what constitutes a household, how-

ever, in situations such as this we will apply a totality of the circumstances approach.

It is our determination that Wendy and Kate were within the meaning of the term "household" on the day of the accident. They had lived at John's residence for over five months at the time of the accident. Jeff, Wendy and Kate are members of John's family. They were living with John with the intent to remain there until they could find an apartment to rent or a house to buy. They received their mail at John's residence and they listed that address on their state and federal tax returns. Jeff, Kate and Wendy shared the kitchen, the bathroom and the laundry room with John. Applying a totality of the facts analysis, we affirm that Jeff, Wendy and Kate were members of John's household at the time of the accident.

Since Jeff, Wendy and Kate were residents of John's household at the time of the accident, coverage was properly denied under Section II(2)(f) of the policy, which denies coverage for bodily injuries to those classified as "insured" under the policy. Additionally, because Kate was regularly residing at John's home at the time of the accident, coverage was also properly denied under Section II(3)(d), which denies medical payments to persons regularly residing on the insured location.

■ Furthermore, we hold that Kate and Wendy have no standing to raise the issue of whether Mutual has a duty to indemnify or defend Jeff or John. While Jeff or John could have raised this issue, neither are parties to this appeal and therefore, we need not decide the issue.

**B. Attorney Fees On Appeal Will Not Be Awarded To Either Party.**

Wendy and Kate claim entitlement to attorney fees under Section 41–1839(1) of the Idaho Code. This section provides that if a claim, which is justly due under the policy, is filed against an insurer and the insurer fails to pay the claim within thirty days, the insurer is liable for reasonable attorney fees incurred as a result of the action to compel payment. I.C. § 41–1839(1). Since this Court has concluded that Mutual has no obligation to pay under the contract, attorney fees will not be awarded to Wendy and Kate.

■ Mutual claims attorney fees on appeal under Section 12–121 of the Idaho Code. This section allows a court, in the exercise of its discretion, to award attorney fees to a prevailing party but only if the court determines that "the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Maslen v. Maslen*, 121 Idaho 85, 92–93, 822 P.2d 982, 989–90 (1991). Kate and Wendy have presented a sufficient issue of contract interpretation to preclude attorney fees being awarded.

### IV.

### CONCLUSION

Kate is not covered under the homeowners policy because she is excluded as a resident of the household at the time of the accident. In addition, she is excluded from coverage because she regularly resided at the insured location. Therefore Mutual has no contractual obligation to defend or indemnify because its duty only arises as to claims "to which this coverage applies." The decision of the trial court granting summary judgment to respondent is affirmed.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS, concur.