63 P.3d 441

**GRIFF, INC., an Idaho corporation, Plaintiff–Respondent–Cross Appellant,**

**and**

**State of Idaho, Department of Agriculture, Plaintiff,**

**v.**

**CURRY BEAN CO., INC., an Idaho corporation, Defendant–Appellant– Cross Respondent.**

No. 26565.

Supreme Court of Idaho, Twin Falls, November 2002 Term.

Jan. 24, 2003.

**318**

Hollifield & Bevan, P.A., Twin Falls, for appellant. G. Richard Bevan argued.

Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, P.A., Boise, for respondent. Rory R. Jones argued.

KIDWELL, Justice.

Griff, Inc. (Griff) filed suit against Curry Bean Company, Inc. (Curry) for breach of contract. A jury awarded Griff compensatory and punitive damages totaling $538,621.20. The district court awarded attorney fees to Griff, including fees expended attempting to collect on the judgment. Curry timely filed this appeal.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Griff grew pinto beans and pink beans near Twin Falls. Curry operated a bonded agricultural warehouse pursuant to Bonded Warehouse Law, Title 69, Chapter 2, Idaho Code. Griff had an ongoing relationship with Curry whereby Griff deposited its beans with Curry. Then, Curry would mill and market the beans. Upon sale of the beans to a third party, Curry would pay Griff the price received for the beans minus a three-dollar milling and marketing charge per cut weight (cwt.).[1]

In 1996, Griff delivered 39,271.09 cwt. of beans to Curry.[2] Curry eventually sold all of the beans to third parties. A dispute arose regarding whether the beans were sold in 1996 or 1997 and whether they were marketed by Curry to third parties or purchased by Curry to cover a "short position."[3] The dispute created uncertainty about the price that Curry owed Griff for the beans—beans were significantly less expensive in 1997 than in 1996. Griff contended that the beans were sold upon delivery to Curry, rather than a third party, in 1996, so that Curry could cover its short position. Pursuant to Griff's contention, the price of the beans was established upon delivery in 1996. Curry, on the other hand, argued that it sold Griff's beans on the same terms that it had always sold them—the price for the beans was not established until Curry sold the beans to a third party. Curry contended that this occurred in 1997.

Griff filed suit against Curry, alleging breach of contract. Subsequently, the district court allowed Griff to amend its complaint to include a prayer for punitive damages.

Griff moved for summary judgment. The court entered an order granting in part and denying in part Griff's motion for summary judgment. The court found that in 1996 the parties entered into a contract for the storage and eventual sale of 39,271.09 cwt. of beans for which Griff had not been paid. Issues of material fact remained, however, regarding setoffs and sale price. Curry filed a motion for reconsideration. Upon reconsideration, the court found that a genuine issue of material fact existed regarding whether the contracts for sale arose in 1996 or 1997. Curry does not appeal summary judgment or the court's order upon reconsideration.

---

1. A "cut weight," "cwt." or "sack" is 100 pounds of beans.

2. In October 1995, Curry sold 5,000 cwt. of Griff beans at a price of $20.00 per cwt. While the price of these beans is included in the award of compensatory damages in this case, this sale and the price at the time of sale are not disputed on appeal.

3. A short position arises when a warehouse does not have sufficient commodities to cover all of its obligations to growers who have deposited commodities in the warehouse.

The issues that remained for trial were: (1) the timing of the contracts for sale; (2) the sale price of the beans; and (3) setoffs or discounts for color, cookability, storage, and seed charges. At trial, the jury found that Curry purchased Griff's beans in three lots, one in May 1996 at $28.00 per cwt., and two in June 1997 at $27.50 per cwt. Curry appeals the jury's findings regarding timing and price of the contracts, but does not appeal the issue of setoffs or discounts.

Curry moved for judgment notwithstanding the verdict and for a new trial. In an order dated April 20, 2000, the district court denied both motions.

After the district court entered judgment, Griff filed a claim with the state's Commodity Indemnity Account Program (CIAP). The CIAP indemnified Griff in an amount equal to 90% of the jury's compensatory damage award and, to that extent, Griff subrogated the CIAP to its claim against Curry. Griff then returned to the district court and, pursuant to I.C. § 12–120(5), sought costs and fees accrued as a result of its efforts to "collect on the judgment" through the CIAP. The district court ordered Curry to pay $14,047.00 for attorney fees and costs incurred recovering from the CIAP.

Curry appealed.

## II.

### STANDARD OF REVIEW

This Court reviews de novo a district court's decision to deny a motion for directed verdict or motion for a judgment notwithstanding the verdict. *Polk v. Larrabee*, 135 Idaho 303, 311, 17 P.3d 247, 255 (2000) (citing *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986)). Either motion is properly denied if the verdict is supported by substantial competent evidence. *Id.* (citing *Lanham v. Idaho Power Co.*, 130 Idaho 486, 495, 943 P.2d 912, 921 (1997)). This Court may not reweigh the evidence or consider the witnesses' credibility, rather, this Court must accept the truth of all evidence against the moving party and draw all legitimate inferences therefrom in favor of the non-moving party. *Id.* at 312, 17 P.3d at 256.

When considering an appeal from a district court's ruling on a motion for new trial, this Court applies the abuse of discretion standard. *Sheridan v. St. Luke's Reg'l. Med. Ctr.*, 135 Idaho 775, 780, 25 P.3d 88, 93 (2001) (citing *Bott v. Idaho State Bldg. Auth.*, 122 Idaho 471, 835 P.2d 1282 (1992)). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Reed v. Reed*, 137 Idaho 53, 56, 44 P.3d 1108, 1111 (2002).

This Court exercises free review over questions of law and may draw its own conclusions from the evidence in the record. *Kohring v. Robertson*, 137 Idaho 94, 98, 44 P.3d 1149, 1153 (2002) (citing *Regjovich v. First W. Inv., Inc.*, 134 Idaho 154, 997 P.2d 615 (2000); *Mut. of Enumclaw v. Box*, 127 Idaho 851, 852, 908 P.2d 153, 154 (1995)).

## III.

### ANALYSIS

A. **The District Court Properly Denied Curry's Motions For Directed Verdict And For Judgment Notwithstanding The Verdict Because The Jury's Findings Of Fact Are Supported By Substantial, Competent Evidence.**

1. **Substantial, competent evidence supports the jury's finding regarding timing of contracts between Griff and Curry.**

In the district court's summary judgment order, from which Curry does not appeal, the district court found that Griff and Curry entered into contracts for the sale of beans; however, genuine issues remained regarding the timing of the contracts and, thus, the damages.

Richard Griff (Richard) testified at trial that in spring 1996, Greg Hull (Hull) offered to purchase all the beans that Griff could

deliver. During this time, Griff delivered several lots of beans totaling 39,271.09 cwt. Richard and Ron Griff (Ron) testified that Curry purchased 7,500 cwt. of beans in May 1996. Notations in Curry's Daily Position Register (DPR) reflect that Curry owned the beans in May and June 1996. In light of the evidence at trial regarding Curry's severe short position, a reasonable person could infer that Curry purchased Griff's beans in May and June 1996. Therefore, substantial, competent evidence supports the jury's verdict regarding the timing of the contracts between Griff and Curry. *See Polk*, 135 Idaho at 312, 17 P.3d at 256; *Opportunity, L.L.C.*, 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002).

### 2. Substantial, competent evidence supports the jury's finding regarding price and the jury's findings regarding price are reasonably certain.

■ Issues of the BEAN MARKET NEWS (BMN) 1997 SUMMARY, Exhibit No. 36, show Idaho dealer prices of $32.00 to $35.00 per cwt. during May and June 1996. Jim Perkins, who owned another local warehouse, testified that the BMN was a good "indicator" of market price for beans, though the actual price was dependent on finding a ready buyer. Perkins estimated that dealers and warehousemen were receiving $31.75 to $32.50 per cwt., depending ·on whether the beans sold were packed in fifty or one-hundred pound bags.

Ron and Eugene Griff both testified that the price they got for their beans was $3.00 less than the price Curry received for the beans when it sold them. Both also testified that the $3.00 difference was attributable to a milling and marketing charge collected by Curry.

Curry's bean settlement sheets, Exhibit No. 35, showed that Curry paid other growers between $26.00 and $29.00 per cwt. in May and June 1996. Hull testified that because Griff was a large producer, it often received a premium price for its beans. Hull stated, "[I] would say on the average a dollar or two more than everybody else on a lot of occasions." The BMN showed the average price Idaho growers received for beans as $26.75 in May 1996; in June, the average rose to $27.00. The prices found by the jury—$28.00 for the May 1996 sale and $27.50 for the June 1996 sale—are well within the range of prices that growers could expect to receive at these times.

Accepting all evidence adverse to Curry as true and drawing all inferences in favor of Griff, we find that substantial, competent evidence supports the jury's finding of prices of $28.00 per cwt. for the May 1996 sale and $27.50 per cwt. for the June 1996 sale. *See Polk*, 135 Idaho at 312, 17 P.3d at 256; *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002).

■ Notably, in the course of arguing that the prices found by the jury are not supported by substantial, competent evidence, Curry argues that the prices on which the compensatory damage award is based are not reasonably certain. Evidence need not provide mathematical certainty of price, it is sufficient if it takes the jury's finding regarding price out of the realm of speculation. *See Lamb v. Robinson*, 101 Idaho 703, 705, 620 P.2d 276, 278 (1980). The same substantial, competent evidence supporting the jury's findings regarding price also shows that the prices found were based on more than mere speculation. Therefore, this Court holds that the prices found by the jury, while not mathematically certain, present a reasonably certain basis for calculating the compensatory damage award.

### 3. Substantial, competent evidence supports the jury's award of punitive damages.

■ "Punitive damages are not favored in law and should be awarded in only the most unusual and compelling circumstances." *Harwood v. Talbert*, 136 Idaho 672, 679, 39 P.3d 612, 619 (2001) (citing *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992)). Idaho Code § 6–1604 states that a party seeking punitive damages must prove "oppressive, fraudulent, wanton, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6–1604(1).

■ The evidence at trial supported the conclusion that Hull intended to defraud Griff during negotiations and that Hull altered business records in anticipation of litigation. Richard testified that in spring 1996, Hull told him that Curry could sell as many beans to end users as Griff could deliver. Hull admitted at trial that Curry was in a short position during the spring of 1996. One may infer that Hull omitted the fact that the beans Curry wanted to purchase were not for market, rather, they were intended to cover Curry's short position.

The DPR originally reflected that Curry counted Griff's beans as Curry's own "company owned beans" in May and June 1996. Marti Hill, a bookkeeper for Curry, testified that Hull told her to alter the DPR in 1998 to show that Curry purchased Griff's beans in 1997 rather than 1996. Hill made other changes, but could not remember if she "was advised or did it on [her] own." Notably, the market price of beans was significantly lower in May and June 1997 than in May and June 1996. From this evidence, one may infer that Hull instructed Hill to falsify records to reflect purchases by Curry at times when the price of beans was lower than it was in May and June 1996.

Accepting all the evidence adverse to Curry as true, and drawing all inferences in favor of Griff, the jury could find that Hull's conduct, on behalf of Curry, was fraudulent. Therefore, substantial, competent evidence supports the jury's punitive damage award.

■ Curry's argument that the punitive damage award cannot stand because the trial record lacks evidence that Hull was an officer or director is without merit. To recover punitive damages against a corporation, one must show that an officer or director participated in, or ratified, the conduct underlying the punitive damage award. *Manning v. Twin Falls Clinic Hosp., Inc.*, 122 Idaho 47, 54, 830 P.2d 1185, 1192 (1992) (citations omitted). Paragraph eight of Griff's complaint alleges that Hull was an "agent, shareholder, officer and director of Curry." Curry's answer states, "Defendant admits the allegations contained in paragraph ... 8 ... of the Complaint." This admission constitutes a binding judicial ad-

mission—"a formal ... statement made by ... [an] attorney, in the course of judicial proceedings, for the purpose, or with the effect, of dispensing with the need for proof by the opposing party of some fact." *Strouse v. K–Tek, Inc.*, 129 Idaho 616, 618, 930 P.2d 1361, 1363 (Ct.App.1997) (citing *McLean v. City of Spirit Lake*, 91 Idaho 779, 783, 430 P.2d 670, 674 (1967)). Judicial admissions may be considered for the purposes which they were made without admission into evidence, and a party making an admission may not controvert the statement on appeal. *Id.* at 619, 930 P.2d at 1364. Thus, Curry cannot dispute Hull's status as an officer or director of Curry.

**4. The district court's orders denying Curry's motions for directed verdict and for judgment notwithstanding the verdict are affirmed.**

Substantial competent evidence supports each of the factual findings challenged by Curry on appeal, including timing of the contracts, price, and prerequisites for an award of punitive damages. Motions for directed verdict or for judgment notwithstanding the verdict are properly denied when, as here, substantial competent evidence supports a jury's findings. *Polk*, 135 Idaho at 311, 17 P.3d at 255 (citing *Lanham v. Idaho Power Co.*, 130 Idaho 486, 495, 943 P.2d 912, 921 (1997)). Therefore, this Court affirms the district court's orders denying Curry's motions for directed verdict and for judgment notwithstanding the verdict.

**B. The Punitive Damage Award Is Not Excessive.**

Curry argues that the punitive damage award is excessive and should be vacated because it constituted 48.65% of Curry's value as of 1999, and that the disproportionality shows the award was intended as punishment rather than as a deterrent. Griff, however, contends that the punitive damage award levied against Curry is not disproportional. It may appear disproportional, but only because Curry transferred assets to third parties to reduce its net worth. Therefore, Griff argues, the punitive damage award should stand.

**322**

To determine whether a punitive damage award is excessive, this Court must ascertain "whether the punitive damage award appears to have been given under the influence of passion or prejudice." *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 612, 726 P.2d 706, 724 (1986) (citations omitted). "Proportionality is a factor to be considered in evaluating whether a punitive award is excessive." *Edmark Motors, Inc. v. Twin Cities Toyota, Inc.*, 111 Idaho 846, 851, 727 P.2d 1274, 1279 (Ct.App.1986). However, this Court also must consider "the prospective deterrent effect of such an award upon persons situated similarly to the defendant, the motives actuating the defendant's conduct, the degree of calculation involved in the defendant's conduct, and the extent of the defendant's disregard of the rights of others." *Id.* (citing *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 908, 453 P.2d 551, 557 (1969)).

Bonded warehousemen hold positions of trust and confidence. They store valuable commodities and they facilitate agribusiness, an important aspect of Idaho's economy, and it is important that bonded warehousemen remain trustworthy. The punitive damage award of $93,497.82 does constitute a significant portion of Curry's 1999 assets. The award is not disproportionate to the compensatory damages awarded. In light of the overall circumstances of this case, including Curry's dishonest conduct and its status as a bonded warehouse, the award is appropriate to serve the purpose of deterring future similar conduct by Curry and other bonded warehouses. Therefore, we affirm the punitive damage award.

## C. The District Court Properly Denied Curry's Motion For New Trial.

Curry moved for a new trial on the grounds of (1) "Excessive damages ..., appearing to have been given under the influence of passion or prejudice," (2) "Insufficiency of the evidence to justify the verdict ...," and (3) "Error in law, occurring at the trial." I.R.C.P. 59(a)(5)-(7). While citing three bases for its motion for new trial, Curry's argument to the district court only addressed whether sufficient evidence supported the jury's findings regarding: (1) timing or existence of the contracts; (2) the amount of compensatory damages; and (3) bad conduct necessary to sustain an award of punitive damages. Therefore, this Court only addresses whether the district court abused its discretion in denying a new trial based on insufficiency of the evidence pursuant to I.R.C.P. 59(a)(6).

When considering an appeal from a district court's ruling on a motion for new trial based on sufficiency of the evidence, this Court applies the abuse of discretion standard. *Sheridan*, 135 Idaho 775, 780, 25 P.3d 88, 93 (2001) (citing *Bott v. Idaho State Bldg. Auth.*, 122 Idaho 471, 835 P.2d 1282 (1992)). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Reed v. Reed*, 44 P.3d at 1111.

The district court properly perceived the issue of whether to grant a new trial as discretionary. *Sheridan*, 135 Idaho at 780, 25 P.3d at 93. In its order denying the motion, the district court stated that it had "broad discretion in determining whether or not to grant or deny a motion for new trial."

The district court also applied the proper legal standard in determining whether to grant the motion for new trial on grounds of insufficient evidence. *Heitz v. Carroll*, 117 Idaho 373, 378, 788 P.2d 188, 193 (1990). It considered "whether the jury's verdict [wa]s against the clear weight of the evidence and whether a new trial would produce a different result." The district court also acknowledged that it could weigh the evidence, pass upon credibility of the witnesses, and make independent findings for comparison with the jury's findings.

The district court exercised reason when deciding Curry's motion for new trial. It weighed the evidence in the record and determined that "[t]here was more than sufficient evidence produced at the trial to sup-

port the damages awarded by the jury." The court also found an abundance of evidence supported the findings of contracts in May and June 1996. Additionally, the court stated that it was "unconvinced that a new trial would produce a different result." Regarding punitive damages, the district court specifically found that the jury "could have found that [Curry] bought Griff's beans without intending to pay for them . . . ."

As the district court perceived the issue of whether to grant a new trial as discretionary, acted within the bounds of applicable law, and employed reason to reach its result, it properly denied Curry's motion for new trial.

**D. Griff's Pursuit Of A CIAP Claim Does Not Constitute An Attempt To Collect On A Judgment For Purposes Of I.C. § 12–120(5).**

Section 12–120(5) states in pertinent part that if "a party is entitled to reasonable attorney's fees and costs under subsection (1), (2), (3) or (4) of this section, such party shall also be entitled to reasonable post-judgment attorney's fees and costs incurred in attempting to collect on the judgment." The district court awarded Griff attorney fees pursuant to I.C. § 12–120(3). Consequently, pursuant to I.C. § 12–120(5), Griff was entitled to attorney fees "incurred in attempting to *collect on the judgment.*" (Emphasis added.) The issue, therefore, is whether Griff's CIAP action constituted an attempt to collect on the judgment entered in this case.

Whether a CIAP claim is an attempt to collect on a judgment for purposes of I.C. § 12–120(5) presents an issue of law over which this Court exercises free review. *Polk,* 135 Idaho at 308, 17 P.3d at 252.

Bonded warehouses are regulated by the Idaho State Department of Agriculture (ISDA) to ensure adequate supplies of agricultural commodities to cover demands from producers who deposit agricultural commodities in their warehouses. The director of the ISDA may declare a warehouse "failed" when one or more of the following events occurs:

(a) An inability to financially satisfy claimants in accordance with this chapter and the time limits provided for in it;

(b) A public declaration of insolvency;

(c) A revocation of license and the leaving of an outstanding indebtedness to a depositor;

(d) A failure to redeliver any commodity to a depositor or to pay depositors for commodities purchased by a licensee in the ordinary course of business;

(e) A failure to make application for license renewal within sixty (60) days after the annual license renewal date; or

(f) A denial of the application for a license renewal.

I.C. § 69–202(8)(a)–(f). In the event the director of the ISDA declares a bonded warehouse failed, producers may recover from the CIAP for losses incurred as a result of breached storage obligations. I.C. § 69–262. Producers may file their claims directly with the CIAP. *Id.* Then, the CIAP advisory committee determines the value of the claim based on the value of the storage obligation on the day the CIAP declared the warehouse failed. I.C. § 69–262(2). If the producer disagrees with the advisory committee's valuation, the producer may request a hearing pursuant to the Idaho Administrative Procedures Act. *Id.* After the value of a producer's loss is established, the CIAP pays the producer 90% of the claim. *Id.* The producer, however, must subrogate the CIAP to the extent of payment. *Id.* Then, the CIAP is free to recover from the warehouseman or the warehouseman's bonding agency.

The CIAP provides commodity producers an efficient means for recovering losses for breached storage obligations from failed bonded warehouses. It does not require a judgment against the warehouse, instead, the CIAP has its own administrative procedure to determine validity and value of claims. In this case, the CIAP's valuation of Griff's claim corresponded to the jury's award of compensatory damages. The CIAP, however, could have valued the claim independently of the jury's verdict.[4] There-

---

4. While not at issue in this case, it appears that the CIAP did not properly follow the procedures

fore, Griff's CIAP action was independent, as opposed to derivative, of recovery on the judgment in this case. Because Griff's CIAP action was completely independent of the judgment in this case, the attorney fees incurred by Griff in pursuit of its CIAP claim were not "incurred in attempting to collect on the judgment." I.C. § 12–120(5). Therefore, the district court's award of post-judgment attorney fees to Griff pursuant to I.C. 12–120(5) is reversed.

### E. Griff Is Entitled To Attorney Fees On Appeal.

■ A series of commercial transactions between Griff and Curry compose the gravamen of this case. Thus, the prevailing party is entitled to reasonable attorney fees pursuant to I.C. § 12–120(3).

Griff has prevailed on all issues on appeal, save one—attorney fees related to its CIAP action. As the prevailing party, Griff is entitled to reasonable attorney fees. This Court may, however, consider Curry's partial success in this matter when determining what constitutes a reasonable fee.

## IV.

## CONCLUSION

The district court's award of attorney fees to Griff related to its pursuit of its CIAP claim is reversed. The judgment of the district court is otherwise affirmed. This case is remanded for entry of judgment consistent with this opinion. Attorney fees in part and costs are awarded to Griff on appeal.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN concur.

---

specified in I.C. § 69–262(2) when valuing Griff's claim. The value of Griff's claim should have been the value of breached storage obligations *on*

*the date that the CIAP declared Curry failed,* to wit, April 11, 2000.