121 P.3d 946

GILLINGHAM CONSTRUCTION, INC., an Idaho corporation, Plaintiff–Counterdefendant–Appellant–Cross Respondent,

v.

NEWBY–WIGGINS CONSTRUCTION, INC., an Idaho corporation, Defendant–Counterclaimant–Respondent–Cross Appellant.

Newby–Wiggins Construction, Inc., an Idaho corporation, Third–Party Plaintiff,

v.

State of Idaho, Third Party Defendant.

State of Idaho, Third Party Plaintiff,

v.

Lombard–Conrad Architects, P.A., an Idaho professional corporation, corporation, Third Party Defendant.

No. 30129.

Supreme Court of Idaho, Boise, March 2005 Term.

July 22, 2005.

Rehearing Denied Oct. 3, 2005.

**18**

Barker, Rosholt & Simpson, LLP, Boise for appellant. Albert P. Barker argued.

Perkins Coie, LLP, Boise, for respondent. Richard C. Boardman argued.

SCHROEDER, Chief Justice.

Gillingham Construction, Inc. (Gillingham) appeals from an order granting Judgment Notwithstanding the Verdict or, in the Alternative, a New Trial entered by the district court setting aside a jury verdict following trial for breach of a construction contract against Newby–Wiggins Construction, Inc. (Newby–Wiggins).

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 1993, the State of Idaho (the State) awarded Newby–Wiggins the Prime Construction Contract (Prime Contract) for the regional headquarters building of the Idaho Department of Parks and Recreation

on Warm Springs Avenue in Boise, Idaho (the Project). Section 3.2.1 of the general conditions of the Prime Contract stated:

> The Contractor shall carefully study and compare the Contract Documents with each other and with information furnished by the Owner pursuant to Subparagraph 2.2.2 and shall at once report to the Architect errors, inconsistencies or omissions discovered. The Contractor shall not be liable to the Owner or Architect for damage resulting from errors, inconsistencies or omissions in the Contract Documents unless the Contractor recognized such error, inconsistency or omission and knowingly failed to report it to the Architect. If the Contractor performs any construction activity knowing it involves a recognized error, inconsistency or omission in the Contract Documents without such notice to the Architect, the Contractor shall assume appropriate responsibility for such performance and shall bear an appropriate amount of the attributable costs for correction.

Section 3.2.2 further stated:

> The Contractor shall take field measurements and verify field conditions and shall carefully compare such field measurements and conditions and other information known to the Contractor with the Contract Documents before commencing activities. Errors, inconsistencies or omissions discovered shall be reported to the Architect at once.

Gillingham does demolition, excavation and grading work. Newby–Wiggins and Gillingham executed an agreement on July 19, 1993, whereby Newby–Wiggins agreed to pay Gillingham a lump sum payment of $284,635 for work on the project. Gillingham's subcontract expressly excluded survey work and in addition contained the following language:

> Subcontractor shall review the Prime Contract, and Subcontractor agrees in respect to the Work to be bound to Contractor by all the obligations set forth in the Prime Contract that the Contractor has assumed.

Gillingham began work under the subcontract in the fall of 1993. After completing approximately 85% of its work, Gillingham's project superintendent, Robert Allen (Allen),

discovered a problem with the existing site elevations which were much higher than those previously reported on the Project's site plans and specifications. Allen informed Newby–Wiggins of the problem, and Newby–Wiggins told Gillingham to stop work until the problem could be resolved. Gillingham stopped its excavation work and removed some of its equipment from the site. On November 1, 1993, Gillingham resumed work and moved its equipment back onto the site. However, seven days later Gillingham had to again stop work due to weather-related delays. Gillingham eventually completed its work in the spring of 1994 based upon new site drawings.

Gillingham alleged it was required to perform extra excavation work as a result of the higher elevation and requested additional compensation for the extra work, plus the time its equipment sat idle, and the costs of moving its equipment back and forth onto the site. Gillingham filed suit against Newby–Wiggins for breach of implied warranty of the plans and specifications and for breach of contract. Newby–Wiggins counterclaimed for unjust enrichment and filed a third-party suit against the State for indemnification. The State filed a third-party suit against the Project's architects, Lombard–Conrad Architects, P.A. (Lombard–Conrad).

Gillingham entered into a settlement agreement with the State and Lombard–Conrad prior to trial. In exchange for $25,000 Gillingham agreed to waive all claims against the State and Lombard–Conrad and assume any liability the State might owe on Newby–Wiggins' indemnification claim. Newby–Wiggins' counterclaim was dismissed on partial summary judgment. A jury trial followed with Gillingham and Newby–Wiggins as the sole remaining parties. At the conclusion of Gillingham's case-in-chief, Newby–Wiggins moved for a directed verdict. The district court granted the motion, holding as a matter of law that (1) Gillingham had not relied on the defective plans and specifications and could therefore not recover against Newby–Wiggins on its implied warranty claim, (2) Newby–Wiggins did not breach its subcontract with Gillingham by failing to pay for the extra work, (3) any liability of Newby–Wiggins to Gillingham passed to the State which in turn passed to Gillingham pursuant to Gillingham and the State's settlement agreement, and (4) Newby–Wiggins' obligation to verify the site conditions passed to Gillingham under its subcontract. Gillingham appealed. This Court affirmed and reversed in part the district court's decision. *Gillingham Constr., Inc. v. Newby–Wiggins Constr., Inc.,* 136 Idaho 887, 42 P.3d 680 (2002). The Court affirmed the decision of the district court to dismiss Gillingham's breach of implied warranty claim on the basis a subcontractor could not bring such a claim against a contractor who had not prepared the plans and specifications. The Court reversed the directed verdict which the district court had entered in finding that there was insufficient evidence for a jury to decide Gillingham had relied on the plans and specifications in bidding its contract under the standards articulated in *Beco Corp. v. Roberts & Sons Constr. Co.,* 114 Idaho 704, 760 P.2d 1120 (1988). The Court also reversed the directed verdict on Newby–Wiggins' indemnity claim. This Court found that the Prime Contract's field verification provision was ambiguous, and there was evidence Newby–Wiggins failed to verify field measurements prior to the commencement of work. Finally, this Court held there was sufficient evidence for a jury to decide whether Gillingham assumed Newby–Wiggins' field verification obligation.

The case was remanded and a new jury trial was held. The jury returned a special verdict awarding Gillingham $53,440.97 and found that the State was not required to indemnify Newby–Wiggins for the damages awarded to Gillingham. Newby–Wiggins filed a motion for JNOV and for a new trial. The district court granted Newby–Wiggins' motion for JNOV, or in the alternative ordered a new trial.

Gillingham moved to disqualify the district judge. The district court denied the motion and later awarded Newby–Wiggins attorney fees in the amount of $135,768.55 and costs as a matter of right in the amount of $1,903.76. Gillingham appealed entry of the JNOV, or alternatively order for new trial, the denial of its motion for disqualification

without cause, and the award of attorney fees to Newby–Wiggins. Newby–Wiggins filed a cross-appeal, which this Court dismissed.

## II.

## GILLINGHAM HAS STANDING TO APPEAL AND THE APPEAL IS NOT MOOT

█ Newby–Wiggins asserts Gillingham does not have standing to bring this appeal, relying on *Mutual of Enumclaw Ins. Co. v. Pedersen*, 133 Idaho 135, 983 P.2d 208 (1999). This position is based on the fact that the State has not appealed the JNOV or grant of a new trial. Consequently, according to Newby–Wiggins, the appeal is moot.

Idaho Appellate Rule 4 states:

Any party aggrieved by an appealable judgment, order or decree, as defined in these rules, of a district court, the Public Utilities Commission or the Industrial Commission may appeal such decision to the Supreme Court as provided in these rules.

I.A.R. 4 (2005).

A "party aggrieved" has been defined "as any party injuriously affected by the judgment." *Fed. Land Bank of Spokane v. Parsons*, 116 Idaho 545, 547, 777 P.2d 1218, 1220 (Ct.App.1989)(citing *Roosma v. Moots*, 62 Idaho 450, 112 P.2d 1000 (1941)). Gillingham is clearly an aggrieved party by the district court's rulings. The jury award of money damages was set aside and Gillingham has been ordered to pay a large amount of attorney fees. Additionally, Gillingham assumed the State's rights and liabilities as against Newby–Wiggins and stands in the place of the State on appeal.

Newby–Wiggins' reliance on *Mutual of Enumclaw Ins. Co. v. Pedersen*, 133 Idaho 135, 983 P.2d 208 (1999), is misplaced. *Pedersen* merely held that a plaintiff in a personal injury case does not have standing to raise the issue of whether an insurance company has a duty to indemnify or defend its insured. *Id.* at 139, 983 P.2d at 212. In *Pedersen* the mother and daughter alleging standing were not named parties to the declaratory judgment. *Id.* In this case Gillingham is named

in the court's order for JNOV or new trial, depriving it of a money judgment. Gillingham has been ordered to pay attorney fees to Newby–Wiggins. *Pedersen* has little to do with this case. Gillingham has standing to file this appeal. The appeal is not moot.

## III.

## THE DISTRICT COURT ERRED IN GRANTING JNOV IN FAVOR OF NEWBY–WIGGINS

### A. Standard of Review

█ The standard of review of a grant or denial of a motion for JNOV is the same as that of the trial court when ruling on the motion. *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986) (citations omitted). A jury verdict must be upheld if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury. *Hudson v. Cobbs*, 118 Idaho 474, 478, 797 P.2d 1322, 1326 (1990) (citations omitted). In reviewing a grant or denial of a motion for JNOV the court may not reweigh evidence, consider witness credibility, or compare its factual findings with that of the jury. *Griff, Inc. v. Curry Bean Co., Inc.*, 138 Idaho 315, 319, 63 P.3d 441, 445 (2003)The court reviews the facts as if the moving party had admitted any adverse facts, drawing reasonable inferences in favor of the non-moving party. *Hunter v. State Dep't of Corrs., Div. of Prob. & Parole*, 138 Idaho 44, 47, 57 P.3d 755, 758 (2002) (citation omitted).

### B. The Record

The district court granted JNOV on three grounds: (1) Newby–Wiggins did not impliedly warrant the accuracy of the plans and specifications, (2) there was not substantial evidence Newby–Wiggins breached a duty to verify field conditions, and (3) there was not substantial evidence the State did not have a duty to indemnify Newby–Wiggins. Each of these grounds was erroneous.

█ The district court improperly weighed the evidence regarding Newby–Wiggins' duty to "verify field measurements" under its Prime Contract, determining that the lack of

a benchmark on the plans and specifications prevented Newby–Wiggins from being able to conduct field measurements under its Prime Contract. There was credible evidence to the contrary. Mr. Newby testified that he eventually went out and verified certain site conditions after work had commenced. He was able to obtain the project benchmark and its corresponding elevation by simply phoning the licensed surveyor hired by Lombard–Conrad to survey the site and create topographic maps. An architect with Lombard–Conrad testified that the project benchmark was made available to Newby–Wiggins and that Newby–Wiggins would have required that benchmark in order to conduct staking. The Prime Contract contained a field engineering provision that required Newby–Wiggins to "engage a registered land surveyor registered in the State where the project is located, to perform land surveying services required" under the contract. To carry out its field-engineering obligation, Newby-Wiggins was required to "*locate benchmarks* and cornerstakes." Mr. Newby testified that he subcontracted for a licensed surveyor to fulfill this requirement and furthermore that he could have asked this surveyor to verify site conditions prior to starting work. He qualified that this was not the normal procedure, but also stated that he could have requested his surveyor to complete such verifications. The jury could reasonably infer that the benchmark was readily available to Newby–Wiggins which had a duty to discover the Project benchmark under the field engineering provision of the Prime Contract. The absence of the benchmark on the plans and specifications did not make Newby–Wiggins' performance of the field verification obligation impossible.

█ The district court also erred in finding Gillingham was required to show that verification of field conditions would have prevented it from submitting an incorrect bid. According to the district court, no evidence was presented that Newby–Wiggins could have prevented Gillingham from submitting an incorrect bid and thus Gillingham's extra work was inevitable. Claims for "extra work" in Idaho do not require this additional causal element:

The test of whether or not such contractor is entitled to additional compensation is whether or not he justifiably relied upon the plans and specifications for the construction in making his bid and entering into the contract. (citations omitted). The reason for this rule is that if unanticipated conditions not reasonably foreseeable are actually encountered in the work and vary substantially from anticipated conditions reasonably foreseeable by the parties at the time they entered into the contract, the contractor is performing an entirely different contract than the one agreed upon and in such case is entitled to the reasonable value of his additional services. *Hash v. R.J. Sundling & Son, Inc.* 150 Mont. 388, 436 P.2d 83, 86 (1967).

*Beco Corp. v. Roberts & Sons Constr. Co,* 114 Idaho 704, 710, 760 P.2d 1120, 1126 (1988) (citation omitted). Gillingham was only required to show: (1) that it relied on the plans and specifications in making its bid, (2) that it encountered conditions that were unforeseeable and varied substantially from the anticipated conditions, and (3) that it performed extra work. Gillingham was not required to show Newby–Wiggins prevented it from submitting a corrected bid. This element separates Gillingham's breach of contract claim from the previously dismissed claim for implied warranty of the plans and specifications. The district court did not recognize this distinguishing factor.

Gillingham presented sufficient evidence that Newby–Wiggins breached its field verification duty and contributed to Gillingham's damages for extra work. Mr. Simmonds, the architect in charge for Lombard–Conrad, testified that had Newby–Wiggins conducted field measurements the plans and specifications could have been redesigned. A redesign would have avoided the need for extra excavation work. The district court dismissed this testimony, relying again on the argument that Newby–Wiggins did not have the appropriate benchmark to verify field conditions. The project benchmark was readily available to Newby–Wiggins and it had a duty to locate the project benchmark. Gillingham presented substantial evidence of its damages and causation.

■ The district court also erred in finding that there was insufficient evidence Newby–Wiggins had a duty to conduct field measurements. According to the district court, if Newby–Wiggins had a duty to verify site conditions, Gillingham likewise had such a duty under the pass-through provision of its subcontract. However, sufficient evidence was presented at trial that Newby–Wiggins' field verification duty did not pass to Gillingham. What constituted "verification of field measurements" was considered ambiguous and submitted to the jury for determination. Mr. Simmonds presented testimony that "field verification" required some form of survey work, and Mr. Newby conceded Gillingham's subcontract excluded survey work. Gillingham's pass-through provision incorporated only those duties under the Prime Contract that were related to its scope of work.

The district court maintained that the State conceded at trial that field verification did not require survey work and thus the field verification duty passed to Gillingham under its subcontract. However, the State's exact testimony was that an entire re-survey of the site would not have been necessary to verify the site conditions. The district court labeled this a distinction without a difference, but this is clearly not the case and not based on drawing reasonable inferences from the facts in favor of Gillingham. The district court's interpretation of Mr. Simmonds' testimony would contradict his prior statement that field verification would require a contractor to hire a professional surveyor. The jury could reasonably conclude the Prime Contract's field verification requirement did not pass to Gillingham because field verification required survey work. The court's grant of JNOV on this ground was improper.

The district court was of the opinion that Newby–Wiggins did not have to do a new survey and that anything less than a new survey to complete the field verification obligation would not meet the accuracy requirements of the Prime Contract. According to the district court, there was not substantial evidence Newby–Wiggins failed to field verify because it could not have conducted field verification without an entirely new survey of the site. This position ignores the possibility that Newby–Wiggins could have hired its own surveyor to conduct the field verification work, which is in fact what Newby–Wiggins did to comply with its field engineering duty. Mr. Simmonds' testimony suggested such an option. An entire re-survey was not required, and something less than an entire re-survey was not outside the scope of Newby–Wiggins' work under the Prime Contract. The jury could reasonably conclude Gillingham was not required to conduct field measurements and that this duty fell solely on the shoulders of Newby–Wiggins.

■ Finally, the district court erred in granting JNOV on the grounds that the State had a duty to indemnify Newby–Wiggins. According to the district court, when read together, sections 3.2.1 and 3.2.2 of the general conditions of the Prime Contract imposed liability on Newby–Wiggins for Gillingham's extra work only in the event Newby–Wiggins performed field measurements and failed to notice or report the site's elevation discrepancies. This position is erroneous for two reasons. First, the plain language of section 3.2.1 requires Newby–Wiggins to check the site plan documents for obvious errors or discrepancies. This duty to inspect the documents is distinctly different from the affirmative duty of section 3.2.2 to go out and conduct field verification measurements prior to starting work. Section 3.2.1 effectively shields Newby–Wiggins from an implied warranty of the plans claim, a claim this Court has already dismissed. Section 3.2.2, however, imposes an affirmative duty to verify site conditions prior to work commencing.

The American Institute of Architects (AIA), which drafted the general conditions used in the Prime Contract, has interpreted section 3.2.2 to mean the contractor bears the risk of discovery of discrepancies on the site. The AIA has stated:

> In contrast to subparagraph 3.2.1, the contractor bears the risk inherent in discrepancies that should have been discovered, whether they were discovered or not. Accordingly, the work should not be started until there has been a positive correlation of the information referred to here. The urgency suggested is to permit correction before the work is too far advanced.

AIA Document A201–1987 (1987) (emphasis added). The jury could likewise have interpreted section 3.2.2 to require Newby–Wiggins to conduct field verifications prior to starting work.

Uncontradicted testimony showed Newby–Wiggins failed to verify field conditions prior to commencing work. There was sufficient evidence that the State did not have a duty to indemnify Newby–Wiggins because Newby–Wiggins had breached its own duty under section 3.2.2. The district court's grant of a JNOV was in error and is reversed.

## IV.

## THE DISTRICT COURT ERRED IN GRANTING THE MOTION FOR A NEW TRIAL

### A. Standard of Review.

I.R.C.P. 59(a) describes several grounds on which a party may bring a motion for new trial, including irregularities in the proceedings of the court, jury or adverse party by which either party was prevented from having a fair trial and where there was insufficient evidence to justify the jury verdict, and for any error in law occurring at trial. I.R.C.P. 59(a)(1),(6),(7)(2005). This Court reviews the grant or denial of a motion for new trial based on an abuse of discretion standard. *Warren v. Sharp,* 139 Idaho 599, 602, 83 P.3d 773, 776 (2003); *Pratton v. Gage,* 122 Idaho 848, 850, 840 P.2d 392, 394 (1992). In reviewing whether or not a district court abused its discretion this Court determines:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

Unlike a motion for JNOV, a trial court may grant a new trial even though there is substantial evidence to support the jury's verdict. *Bott v. Idaho State Bldg. Auth.,* 122 Idaho 471, 475, 835 P.2d 1282, 1286 (1992). When ruling on a motion for new trial, a trial court has "broad discretion to redress what it perceives to be a miscarriage of justice." *Id.* (citing *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1986)). A trial court may weigh the evidence and credibility of the witnesses and set aside the jury's verdict based upon its own independent evaluation of the evidence. *Litchfield v. Nelson,* 122 Idaho 416, 422, 835 P.2d 651, 657 (Ct.App.1992)(citing *Robertson v. Richards,* 115 Idaho 628, 631, 769 P.2d 505, 508 (1989)).

A jury instruction that incorrectly states the law provides grounds for ordering a new trial. *Sherwood v. Carter,* 119 Idaho 246, 260, 805 P.2d 452, 466 (1991). "On appeal, the review of jury instructions is generally limited to a determination of whether the instructions, when considered as a whole and not individually, fairly and adequately present the issues and state the applicable law." *Id.* at 256, 805 P.2d at 462 (citations omitted). In evaluating whether an irregularity in the proceedings merits a new trial, a district court takes into consideration whether the irregularity had any effect on the jury's decision. *See Hinman v. Morrison–Knudsen Co.,* 115 Idaho 869, 872, 771 P.2d 533, 536 (1989)(district court properly granted new trial as there was reasonable doubt a bailiff's refusal to produce materials during jury deliberation had an effect on the jury's decision). District courts apply a two-part test when considering motions for new trial based on the ground of insufficient evidence. First the court considers whether the verdict was against the weight of the evidence and that justice would be served by vacating the verdict; and, second, the court considers whether a different result would follow upon retrial. *Heitz v. Carroll,* 117 Idaho 373, 378, 788 P.2d 188, 193 (1990) (citation omitted).

### B. The district court erred in granting a new trial as an alternative to JNOV.

The district court granted Newby–Wiggins' motion for new trial on three grounds: (1) the jury was improperly instructed, (2)

Gillingham's counsel caused an irregularity in the proceedings and prejudiced the jury in making certain remarks during closing arguments, and (3) there was a lack of substantial evidence to support the jury's verdict. The record refutes each of these grounds.

### 1) The jury was properly instructed

"The standard of review for issues concerning jury instructions is limited to a determination whether the instructions, as a whole, fairly and adequately present the issues and state the law." *Silver Creek Computers, Inc. v. Petra, Inc.*, 136 Idaho 879, 882, 42 P.3d 672, 675 (2002); *Ricketts v. E. Idaho Equip., Co., Inc.*, 137 Idaho 578, 581, 51 P.3d 392, 395 (2002). The court determined that it erred in failing to instruct the jury that to find the State was not required to indemnify Newby–Wiggins they had to also find Newby–Wiggins discovered the errors in the elevations prior to Gillingham performing the extra work. According to the district court, to hold otherwise effectively imposes liability on Newby–Wiggins for the previously dismissed claim of implied warranty of the plans and specifications. However, the district court relies on the erroneous conclusion that section 3.2.2 imposes liability on Newby–Wiggins only in the event it conducted field measurements and failed to report such discrepancies under 3.2.1. This conclusion ignores the affirmative duty in section 3.2.2 and contradicts the American Institute of Architects' statement of who bears the risk of discovery of discrepancies at a construction site between the owner and general contractor.

■ Additionally, an instruction on Gillingham's pass-through provision was not necessary because a sufficient instruction was offered to the jury regarding whether Gillingham had a duty to verify field conditions and subsequently breached that duty as part of Newby–Wiggins' affirmative defense. The district court concluded the pass-through provision was unambiguous and its interpretation was for the court and not the jury to decide. However, what constitutes "field verification" under the Prime Contract was clearly ambiguous, as reflected in the conflicting testimony over this clause's meaning

and this Court's prior decision. The duty to verify site conditions only passed to Gillingham if the obligation fell within the scope of Gillingham's work. Testimony was presented that the field verification requirement was outside the scope of Gillingham's work because it required survey work. A contrary instruction—that the duty to field verify automatically passed to Gillingham—would have improperly instructed the jury on the interpretation of the parties' contract. The instructions fairly and accurately instructed the jury on the law and issues to be decided. The district court abused its discretion in finding the instructions were improper.

The district court erred in finding that the State was required to indemnify Newby–Wiggins for any damages assessed against it by the jury. Newby–Wiggins breached its duty under section 3.2.2. By the plain language of this section the State was therefore not obligated to indemnify Newby–Wiggins. Likewise the obligations of section 3.2.2 did not pass to Gillingham as they required some form of survey work. There was substantial evidence the State (and thereby Gillingham) was not required to indemnify Newby–Wiggins. While the district court expressed frustration at being "hamstrung" by this Court's earlier decision, it ignored that decision and reverted back to the logic of the original district judge which this Court had reversed.

### 2) Irregularity in the proceedings

■ The district court likewise erred in finding counsel's statements at trial caused an irregularity in the proceedings that unfairly prejudiced the jury against Newby–Wiggins. This Court has held that where counsel fails to make a proper objection to evidence or testimony offered at trial the issue is not preserved for appeal. *See, Wheaton v. Indus. Special Indem. Fund,* 129 Idaho 538, 541, 928 P.2d 42, 45 (1996). Gillingham's counsel remarked in closing that should the jury find the State was required to indemnify Newby–Wiggins for Gillingham's claim, the result would be that Gillingham will recover nothing. Counsel's statement was an inaccurate portrayal of Gillingham's recovery, but Newby–Wiggins

failed to object to the statement during trial. The district court ignored Newby–Wiggins' waiver of objection and instead granted a new trial. This was improper and an insufficient ground to grant a new trial. In doing so the district court had *ex parte* contact with the jury and appears to have considered information from that contact.

### 3) Ex parte jury contact

■ In the course of post-trial proceedings the fact developed that the district judge engaged in conversations with the jury following the verdict but before post-trial motions were heard, or could even be filed, and before a final judgment was entered. The district judge discounted the effect of the contact, but the language concerning that disavowal is potent evidence to the contrary. The district judge stated the following:

THE COURT: *I do have question for you and I'm going to—I'm going to tell everyone up front that after the decision, I went back to talk to the jury, as I always do, and I never comment on a jury's verdict at all. But the jury asked me a question and I came back and it was the first question they asked me. And that was we're really curious about the settlement—about what this agreement was. So I told them what the agreement was. And they asked me did Gillingham receive money from the State and I said, yeah. They were shocked.* They all indicated that they would have—that this would have affected them. The reason that becomes important—normally I would not say it's important and certainly if the parties ask for me to do a remittitur at the very least, at the very least I would do a remittitur in this case, but your comment to the jury in closing argument which said, if you find the State is responsible, my client receives nothing. It really becomes crucial when I heard the jury make that remark. And it was crucial before I even heard it because I still have a problem with that statement and I've read what you have written in your brief, but to me that was such a fundamental error and the wrongness of that comment was brought home to me when I went back to the jury. And I want to know why at the very least I

should not grant a new trial because I have to tell you sitting as a thirteenth juror, I think there was a fundamental error made here. So I will tell you at the very least I'm considering a new trial, at the very least. And no matter what, even if I didn't do a new trial, I would have—I would reduce the verdict based on the fact that there's already been a settlement paid. So why is it that your comment was not fundamental error? And I read stuff about how you were just trying to do it like personal injury, 50–50, and that's just—I'm sorry. As I told you then and I will tell you now, that's ridiculous because what you told them was fundamentally false. It was fundamentally false because that was not the effect of the decision and that's the reason that I need to have that addressed because, as I indicated right now, I am most probably at the very least going to grant a new trial and I certainly would have a remittitur.

(Emphasis added). Subsequently, the district judge made the following comment:

THE COURT: For the purposes of this discussion, I am not going to take into account what the jurors said to me when I went in there. In my view it is not relevant to my decision. *All I'm saying is that it did draw my attention to the enormity of your statement, because they understood that your client would receive nothing. That's what they understood.* But I want to keep focused on this because I do have other matters. So I want to keep focused on it.

■ (Emphasis added). To the extent there is a practice of trial judges engaging jurors in a dialogue of questions and answers following a verdict, but before post trial matters, including sentencing, are heard and decided, it is improper. It is no different than any other *ex parte* contact that may influence the outcome of a proceeding. After a verdict is taken the judge may thank the jury members for their service and address those issues of accommodating the jury members' convenience. Otherwise, the door between the bench and the jury is closed so long as

the case is pending, only to be opened in a proper proceeding.

#### 4) The verdict was supported by substantial evidence

 There was substantial evidence of Gillingham's damages and that Newby–Wiggins caused such damages. Damages need not be proved with mathematical exactitude. *Bumgarner v. Bumgarner*, 124 Idaho 629, 640, 862 P.2d 321, 332 (Ct.App.1993). Traditionally, a claim for damages is thrown out only where it is overly speculative. *Id.* Here the court did not find damages were speculative nor did Newby–Wiggins claim damages were excessive. Gillingham presented substantial evidence it performed extra work and that it incurred additional costs from the performance of such work. Thus, Gillingham presented substantial evidence of its damages. Likewise, there was substantial evidence Newby–Wiggins caused Gillingham's damages. As repeatedly noted above, Newby–Wiggins breached its duty to field verify the site. Testimony was presented that had Newby–Wiggins verified site conditions and discovered the elevation errors, the site plans could have been redesigned, thereby avoiding the need for extra work. Gillingham sufficiently proved causation and therefore the district court abused its discretion in finding Gillingham did not demonstrate the causation element of its claim. For all these reasons, the court abused its discretion in granting Newby–Wiggins' motion for new trial.

### V.

### THE MOTION FOR DISQUALIFICATION

Gillingham argues that under Rule 40(d)(1)(F), if a new trial is ordered by a trial court after a trial has already been held, a party has a right to file a motion for disqualification without cause within 21 days of the service of the order specifying who will be the presiding judge. Gillingham filed a timely motion for disqualification pursuant to Rules 40(d)(1), 41(d)(5) and *Jahnke v. Moore*, 112 Idaho 944, 737 P.2d 465 (Ct.App.1987). Gillingham argues the district court improperly denied its motion for disqualification and had no authority to act on the request for

attorney fees. Gillingham asks that the order for attorney fees be held void.

The motion for disqualification is moot.

### VI.

### THE AWARD OF ATTORNEY FEES TO NEWBY–WIGGINS IS REVERSED

The district court awarded attorney fees to Newby–Wiggins as the prevailing party under Idaho Code § 12–120(3). Newby–Wiggins is no longer the prevailing party. The award is reversed.

### VII.

### GILLINGHAM IS ENTITLED TO AN AWARD OF ATTORNEY FEES ON APPEAL

 Idaho Code § 12–120(3) allows for the reasonable award of attorney fees to the prevailing party of a civil appeal involving a contract for services. I.C. § 12–120(3)(2004). Gillingham is the prevailing party on appeal and was the prevailing party below. The gravaman of its claim involved breach of a contract for services, namely demolition, excavation and grading services. Pursuant to I.C. § 12–120(3) and its subcontract, Gillingham is entitled to a reasonable award of its attorney fees at trial. Costs and attorney fees on appeal are awarded to Gillingham.

### VIII.

### CONCLUSION

Gillingham has standing to bring this appeal. The district court's grant of JNOV or in the alternative a new trial is reversed. The issue of whether the district court properly denied Gillingham's motion for disqualification without cause is moot. The award of attorney fees and costs to Newby–Wiggins is reversed. Gillingham is entitled to a reasonable award of attorney fees on appeal pursuant to I.C. § 12–120(3) and its subcontract agreement. Gillingham is awarded costs on appeal. The case is remanded to the district court to enter a judgment consistent with the jury verdict and this opinion and to determine any issues of costs and attorney fees to Gillingham. The district court indicated that

it would grant remittitur if asked by the parties. That request was not made and there is no appealable ruling before this Court. Any request at this time is time-barred.

Justices TROUT, EISMANN, BURDICK and JONES concur.