835 P.2d 1282

Donald BOTT, John Anton Berg, and James E. Hoar, individually and as joint venturers, Plaintiffs–Appellants/Cross-respondents,

v.

IDAHO STATE BUILDING AUTHORITY, an Independent Public Body Corporate, Defendant–Respondent/Cross-appellant.

No. 18540.

Supreme Court of Idaho,
Boise, February 1992 Term.

Aug. 7, 1992.

Hall, Farley, Oberrecht & Blanton, Boise, for plaintiffs-appellants. Raymond D. Powers, argued.

Hawley, Troxell, Ennis & Hawley, Boise, for defendant-respondent. Albert P. Barker, argued.

BISTLINE, Justice.

This breach of contract case arises out of the dismissal of architects Bott, Berg, and Hoar ("BBH") by the Idaho State Building Authority ("the Authority") from a project to expand and modernize the Idaho State School for the Deaf and Blind located in Gooding, Idaho ("the Project").

In January of 1985, BBH and the Authority entered into a contract ("the Agreement") providing that BBH would provide architectural and certain other services for the project. The Agreement provided that the Authority would pay BBH 7.75% of the total construction cost plus an incentive fee equal to 10% of the amount by which the total construction cost was less than $8.2 million. Any "additional services" rendered by BBH were to be compensated at an hourly rate. According to the Agreement, BBH's services were divided into the following phases: schematic design, design development, final documents and bidding, and construction. BBH was terminated before they were able to complete the construction phase.

After their termination, BBH brought suit seeking compensation for work they had completed in providing the project design. The parties' theories at trial as articulated by the district court, were as follows:

> The plaintiffs contended that they performed the architectural services that they were hired to perform but that repeated delays were caused when the [ ] Authority changed its mind and continually adjusted, in major ways, their designs. The defendant contended that the architects caused numerous delays and were difficult to work with and caused problems for themselves because they did not follow the 'chain of command.'

Decision on Post–Trial Motions at 2.

At trial, the jury found unanimously that BBH had substantially performed under the contract until their termination, and

that the Authority had breached the contract. The jury awarded BBH damages of $201,542 less an offset of $2250 for a total verdict of $199,292. That jury award included amounts for schematic design work, the incentive bonus fee, and landscaping and interior design services.

The Authority filed several post-judgment motions. First, the Authority moved for judgment n.o.v. under I.R.C.P. 50(b), arguing that insufficient evidence supported BBH's damages award. Second, the Authority moved for a new trial under three distinct theories, under I.R.C.P. 59(a)(5), (6), and (7). Relying upon I.R.C.P. 59(a)(5), the Authority argued that the damages awarded to BBH were excessive and resulted from passion or prejudice; as an alternative to a new trial, the Authority requested a remittitur. Also under Rule 59(a)(5), the Authority argued that the set-off damages awarded to it were inadequate and resulted from passion or prejudice; as an alternative to a new trial, the Authority requested an additur. Under I.R.C.P. 59(a)(6), the Authority argued the evidence was not sufficient to sustain the verdict. Relying upon Rule 59(a)(7), the Authority also argued that the verdict was based upon prejudicial errors of law which occurred at trial.

The district court ruled that the Authority was not entitled to judgment n.o.v. The court granted a new trial confined to the issue of BBH's damages, stating that it was not able to make a damage determination based on the record before it, for which reason it could not order a remittitur.

BBH requested costs, attorney fees and prejudgment interest. The Authority filed a motion in opposition to the request. The district court postponed ruling on that motion to await the outcome of the new trial which it had ordered. BBH appealed and the Authority cross-appealed. The main issues raised on appeal are:

I. Whether the district court erred in refusing to grant judgment n.o.v. in favor of the Authority.

II. Whether the district court erred in granting a motion for a new trial on the issue of damages, and not allowing a new trial on the issue of liability.

III. Whether either party is entitled to attorney fees at trial or on appeal.

IV. Whether an award of prejudgment interest is appropriate.

## I. THE MOTION FOR JUDGMENT N.O.V.

■ In response to the Authority's request for judgment n.o.v. the district court ruled that "[t]he defendant is not entitled to a judgment n.o.v. on the issue of breach of contract. There is substantial evidence that would support the jury's determination that the plaintiffs substantially performed the contract, were wrongfully terminated and were damaged as a result of the termination." Decision on Post–Trial Motions at 4.

■ In determining on appeal whether a judgment n.o.v. should or should not have been granted, this Court applies the same standard as does the trial court, and grants no deference to that court's views. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). This Court must review the record, drawing all inferences from the evidence in a light most favorable to BBH, to determine whether substantial evidence supports the jury verdict. However, in the present situation we cannot properly review the trial court's decision because the court misconstrued the Authority's judgment n.o.v. motion, in particular, that portion of the Authority's motion which asserts that "[t]here is not sufficient evidence to support a substantial portion of Plaintiffs' *claims for damages*, and the Defendant should be granted a Judgment Notwithstanding the Verdict with respect to these *damages* under Rule 50(b) of the Idaho Rules of Civil Procedure." R. at 201 (emphasis added).

The Authority's main contention in its motion and on appeal is that, as a matter of law, based upon the evidence presented at trial, BBH is not entitled to *damages* for any alleged "additional services" performed by them, or for the incentive bonus.

The trial court only discussed BBH's proof at trial on these issues in the context of the Authority's new trial motion. Because the trial court did not discuss whether substantial evidence supported the jury's award of damages to BBH, and only addressed the jury's finding of liability, it did not adequately address the Authority's motion for a judgment n.o.v. Therefore, we must remand for the trial court's reconsideration of the Authority's motion, in accordance with this opinion.

## II. THE MOTION FOR A NEW TRIAL

■ In response to the Authority's motion for a new trial based upon Rules 59(a)(5), (6) and (7), the court granted a new trial on the issue of damages only. A trial court may properly grant a motion for a new trial even though there is substantial evidence to support the jury's verdict and a judgment n.o.v. would be inappropriate. *Quick,* 111 Idaho at 767, 727 P.2d at 1195; *see also Sheets v. Agro–West, Inc.,* 104 Idaho 880, 884, 664 P.2d 787, 791 (Ct.App. 1983). The two motions serve distinct purposes and different standards govern their allowance. *Quick.*

■ In determining whether to order a new trial, the trial court has broad discretion to redress what it perceives to be a miscarriage of justice. *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1986). The trial court is better positioned than an appellate court to evaluate the demeanor, credibility, and testimony of the witnesses in weighing the evidence before it. *Quick,* 111 Idaho at 770, 727 P.2d at 1198.

■ Appellate review must be more limited; we review the evidence but do not "weigh" it in the same manner as the trial court does. *Id. (citing Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979)). This Court will not reverse a trial court's order granting a motion for a new trial unless the court has manifestly abused its broad discretion. *Quick; Jones v. Panhandle Distribs., Inc.,* 117 Idaho 750, 792 P.2d 315 (1990). In *Sun Valley Shopping Ctr. v. Idaho Power,* 119 Idaho 87, 803 P.2d 993 (1991), we set out the test for evaluating whether a trial court has abused its discretion:

(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. (Citation omitted).

*Id.* at 94, 803 P.2d at 1000.

### A. Grounds for Grant of a New Trial

■ In making its ruling, the trial court stated,

There is no reasonable basis in the evidence for the jury's determination that the plaintiffs were entitled to the full fee for the duplicative schematic design work nor for the other additional services. Additional services, under the unambiguous language of the contract, were to be reimbursed on an hourly rate. Because of the errors in the jury's determination of damages, I find that the defendant is entitled to a new trial on the issue of damages. The errors in the damage computations are so substantial that the Court can only conclude that the jury was acting under the influence of prejudice. Moreover, there is no basis at all for an incentive bonus under the express terms of the contract. The language of the contract is clear that the bonus is based on the total cost of construction. The plaintiffs' attempts to skirt the language and avoid its limits are unavailing.

Decision on Post–Trial Motions at 8.

■ That discussion by the trial court gives no indication that the court considered separately each basis for the Authority's request for a new trial, thereby "act[ing] within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it." *Sun Valley Shopping Ctr.,* 119 Idaho at 94, 803 P.2d at 1000. It is impossible for us to glean from the

court's ruling which of the Rule 59(a)[1] grounds enumerated by defendant were relied upon by the trial court in reaching its decision. This raises the same concern we had in *Quick v. Crane,* namely, how are we to determine whether the trial court has abused its discretion in granting a new trial if we are unable to ascertain upon which ground it relied for its ruling? Because the applicable standard for granting a new trial differs depending on which ground the trial court employs, we cannot, in any meaningful fashion, determine whether the court abused its discretion without first identifying which standard the court should have applied. In order that we "preserve the exercise of sound judicial discretion at the trial court level," *Quick,* 111 Idaho at 773, 727 P.2d at 1201, we must consider not just the result of a discretionary decision below, but the process by which the trial judge reached that decision. Our Court of Appeals aptly summarized this principle:

> Appellate review of judicial discretion should not be result-oriented. An appellate court should not focus primarily upon the outcome of a discretionary decision below, but upon the process by which the trial judge reached his decision. In order for the appellate court to perform this function properly, it must be informed of the reasons for the court's decision. Unless those reasons are obvious from the record itself, they must be stated by the trial judge. Where the reasons are neither obvious nor stated, the appellate court is left to speculate about the trial court's perception of the law and knowledge of the facts. As a practical matter, the appellate court finds itself locked into a result-oriented view.

*Sheets,* 104 Idaho at 888, 664 P.2d at 795.

Because the specific ground or grounds for a new trial are not apparent from the record, and the trial court's discussion of the bases for its decision is ambiguous, we remand to the trial court for a clarification of the rationale utilized in granting a new trial on the issue of damages.

### B. Jury Instructions

This Court's review of jury instructions is limited to determining "whether the jury instructions, when considered as a whole, and not individually, do fairly and adequately present the issues and state the applicable law." *In re Estate of Roll,* 115 Idaho 797, 770 P.2d 806 (1989). After reviewing the complete set of jury instructions given at trial, we conclude that, in their entirety, they accurately presented the issues and stated the applicable law. We also conclude that any errors in the given jury instructions were not prejudicial. Because the likelihood of a new trial exists, especially on the issue of damages, we will discuss each of the challenged jury instructions.

#### 1. The Substantial Performance Instruction

■ At trial the Authority requested the following instruction, which the trial court declined to give, regarding BBH's contractual duties:

> In determining whether Plaintiffs have substantially performed the Architect Agreement you are instructed that among the important and essential benefits Defendant was entitled to receive from Plaintiff under the contract were:
>
> (1) Plans, Specifications and Drawings that were complete, definite and specific.
>
> (2) Reasonable and substantially accurate costs of the project which estimate the Defendant was entitled to rely upon.
>
> (3) All services to be performed by Plaintiffs in a timely manner for approval by the Idaho State Building Authority.
>
> (4) Services that met with the approval of the Defendant.

Respondent/Cross–Appellant's Reply Brief, Appendix A.

---

1. The Authority moved for a new trial based on the following subsections of I.R.C.P. 59(a):

 5. Excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice.

 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

 7. Error in law, occurring at the trial. . . .

Rule 51(a)(2) of the Idaho Rules of Civil Procedure recommends that a trial judge use the applicable Idaho Jury Instruction unless she finds "that a different instruction would more adequately, accurately or clearly state the law." Also, where the substance of a proposed instruction is adequately covered in another instruction actually given, a trial judge does not err in refusing to give the proposed instruction. *Quincy v. Joint School Dist. No. 41, Etc.*, 102 Idaho 764, 640 P.2d 304 (1981).

The trial court gave the following instruction:

When I say that plaintiffs must have 'substantially performed' the contract or that 'substantial performance' of the contract is required, I mean that, although there may have been some deviations or omissions from the performance called for by the language of the Architect Agreement, the Idaho State Building Authority received the important essential benefits for which it contracted for [sic] up until the time of their termination.

R. Vol. 12 at 170. This instruction is identical to IDJI 609 with the addition "for up until the time of their termination," which does not change its meaning.

The given jury instruction accurately stated the law of substantial performance, as well as adequately stating BBH's duty to the Authority. There was no need for an instruction that specifically listed "architects' duties" under a contract because the Agreement itself specifically delineated each party's contractual obligations, and was admitted into evidence. In many instances, the Agreement established the equivalent duty imposed by section (1) of the requested instruction, that BBH was to provide "plans, specifications and drawings that were complete, definite and specific." [2] The Agreement also clearly established

that BBH was to "prepare and submit a detailed estimate of the construction cost of the Project based upon design documents and existing relevant market conditions," as section (2) of the proposed instruction required. Exhibit 1, p. 1.

Sections (3) and (4) of the requested instruction overlap in their requirement that BBH's services meet with the approval of the Authority. This condition also was explicitly included in the Agreement, which required in numerous places that BBH submit their plans to the Authority "for approval by the Authority."

Section (3)'s requirement that services be completed in a "timely manner" is an implicit condition of the Agreement. When no time of performance is expressed in a contract, which was so in this case, it will be implied that the contract must be performed within a reasonable time. *Obray v. Mitchell*, 98 Idaho 533, 567 P.2d 1284 (1977); *McFarland v. Joint School Dist. No. 365*, 108 Idaho 519, 700 P.2d 141 (Ct. App.1985). The jury was so instructed in instruction number 11, further negating the need for the Authority's requested instruction. R. Vol. 12 at 175.

The Authority fashioned its requested instruction after language in *Nave v. McGrane*, 19 Idaho 111, 113 P. 82 (1910), which the Authority claims is directly on point and justifies giving an additional, separate instruction on architects' duties. We disagree. In *Nave*, the architect failed to deliver the essential benefit of the contract; the plan he provided was *entirely* unworkable and lacked numerous fundamental provisions. The *Nave* court found the evidence at trial to demonstrate that the plans themselves "clearly show[ed] that they are not definite and certain and are not in conformity with the recognized authorities

**2.** The Agreement required BBH to "provide drawings and other documents illustrating the scope, scale and relationship of Project components for approval by the Authority," and to "prepare design development documents for approval by the Authority consisting of design criteria, drawings, and outline specifications to fix and describe the size and character of the entire Project as to architectural, structural, mechanical and electrical systems, materials and

such other essentials as may be appropriate." Exhibit 1, p. 1. It also required BBH to "prepare drawings, plans and specifications setting forth in detail all requirements for construction of the entire Project, including necessary bidding information and instructions, bidding forms, general and special conditions of the construction contract and all necessary and appropriate construction contract documents." Exhibit 1, p. 2.

on engineering, contracts, and specifications and architecture." *Id.* at 117, 113 P. at 84. To the contrary, in the present case, the plans provided by BBH were accepted by the Authority and ultimately used in constructing the Project, supporting the jury's determination that BBH did substantially perform and that the Authority did in fact receive the essential benefit of the Agreement.

The Authority's contention that its requested instruction was necessary because BBH attempted to show that they need not provide complete, definite and specific construction documents is also unfounded. As the sole support for its assertion, the Authority cites to a portion of the testimony of Brian Smith, an architect unrelated to the Project, called as a witness by BBH:

> Q.: And so in every building you design, you leave out the beam lengths for the contractor, and he has got to figure out what they are?
>
> A.: Yes, and there is good reason for that.

Tr. Vol. 11 at 1919. Mr. Smith testified that a complete set of construction documents need not, and in fact preferably would not, contain the dimensions of beams and bolts to be mounted onto concrete footings of a building. He further testified that the determination of beam lengths and bolt sizes must be made by a steel fabricator; the fabricator must personally measure the building foundations and "find out where things actually ended up in the concrete work before he can size the beams and bolts ..." Tr. Vol. 11 at 1917. While the Authority attempts to characterize the absence of specific beam length dimensions as a flaw in the documents, when this passage is placed in the full context of Mr. Smith's testimony, it lends no credence to the Authority's contention.

In summation, the trial court's refusal to instruct the jury using the Authority's requested instruction on BBH's contractual duties was not erroneous, as the given instruction IDJI 609 properly stated the applicable law.

## 2. The Waiver Instruction

 The Authority claims it was prejudiced by the trial court's jury instruction on waiver:

> A party is not liable for breach of contract if the other party has waived the breach.
>
> Waiver is a voluntary relinquishment of a known right and may be evidenced by conduct, by words, or by acquiescence.

R. Vol. 12 at 174. A waiver instruction in this form was less than ideal in the present case, because waiver of contractual breach was not an issue at trial. No prejudice resulted, however, because the jury was not given a chance to employ that aspect of waiver in rendering its special verdict.

*Everton v. Blair*, 99 Idaho 14, 576 P.2d 585 (1978), cited by the Authority, is distinguishable. The Authority relies upon *Everton* for the proposition that it was prejudicial error for the court below to instruct the jury on the law of waiver when no evidence at trial supported a finding of waiver. In *Everton*, the jury returned a verdict for the defendant Blair, on whose behalf a waiver instruction had been given, thereby creating the possibility that the jury had relied upon the erroneous instruction in reaching its verdict. Due to that possibility, we held that the trial court had properly granted a new trial. Here, because no waiver of breach was found, there was no possibility that the jury relied upon the instruction, and hence, no error mandating a new trial.

The Authority also claims prejudice because the court allowed BBH, in closing argument, to refer to the waiver instruction in conjunction with their argument that the Authority had waived a claim to any set-off damages by terminating BBH from the Project. Whether or not this argument was proper, no prejudice can be shown to have occurred; the jury clearly did not find that the Authority had waived a right to a set-off, as evidenced by the fact that they awarded the Authority set-off damages.

Although no reversible error occurred by virtue of the jury instructions, we acknowl-

edge that the instruction on waiver contained excess verbiage which did not address the specific issue of waiver of set-off damages. The second paragraph of that instruction which states, "[w]aiver is a voluntary relinquishment of a known right and may be evidenced by conduct, by words, or by acquiescence," is sufficient by itself to inform the jury of the law of waiver. Such an instruction would work in conjunction with given instruction number 16 which clearly and accurately states the Authority's potential entitlement to set-off damages. Of course, in event of a new trial, a waiver instruction would be appropriate only if evidence presented supported a possible finding of waiver of set-off damages. *Walton v. Potlatch Corp.*, 116 Idaho 892, 781 P.2d 229 (1989); *Bratton v. Slininger*, 93 Idaho 248, 460 P.2d 383 (1969).

In any case, BBH's requested instruction, "If you find that the defendants have breached the agreement by terminating the architects, then they have waived their right to a set-off," is not an accurate statement of the law and in the event of a retrial, should not be given in instructing the jury.

### C. New Trial Solely on the Issue of Damages

Next, we turn to the Authority's contention that the trial court abused its discretion in granting a new trial solely on the issue of damages, and not ordering the issue of liability to be retried as well. Until we are apprised of the 59(a) ground under which the trial court granted the new trial, our determination of this issue would be premature; hence, we decline to address it at present.

### III. ATTORNEY FEES

■ On an appeal, this Court "shall pass upon and determine all the questions of law involved in the case ... and necessary to the final determination of the

case." I.C. § 1–205; *Robertson v. Richards*, 115 Idaho 628, 769 P.2d 505 (1989). Accordingly, we will address the parties' requests for attorney fees.

BBH requests attorney fees and costs in the litigation below pursuant to I.C. § 12–120. The Authority, on the other hand, contends that I.C. § 12–117 is the controlling attorney fees statute because it is a "state agency" as defined by I.C. § 67–5201(1). The Authority further argues that application of the current version of I.C. § 12–120 would be an unconstitutional impairment of contractual obligations because the parties entered into the Agreement before the date of the relevant amendments.

As the Authority correctly points out, if it is a "state agency" then I.C. § 12–117 [3] will apply and BBH, if the prevailing party below, would be entitled to attorney fees only if the Authority defended BBH's suit without a reasonable basis in fact or law. If I.C. § 12–120(3) applies, the prevailing party below will be entitled to attorney fees without a special showing.

Our inquiry includes determining whether the Authority is a state agency. Idaho Code § 12–117(3)(b) directs our attention to I.C. § 67–5201(1) for the definition of agency: "any state board, commission, department or officer authorized by law to make rules or to determine contested cases, except those in the legislative or judicial branch, the state militia and the state board of corrections...." Initially, we note that the title "Idaho State Building Authority" does not include any of the descriptive terms chosen by the legislature to define agency, that is "board, commission, department or officer." While this fact is of some assistance, we must examine what powers have been bestowed upon the Authority.

We note that the legislature has not empowered the Authority to determine "contested cases." *See* I.C. Tit. 67, ch. 64. In this case, the determinative language in the

---

**3.** I.C. § 12–117(1) reads: In any administrative or civil judicial proceeding involving as adverse parties a state agency and a person, the court shall award the person reasonable attorney's fees, witness fees and reasonable expenses, if the court finds in favor of the person and also finds that the state agency acted without a reasonable basis in fact or law.

definition of agency is "authorized by law to make rules."

"Rule" in I.C. § 67–5201(7) is defined as "any agency statement of general applicability that implements or prescribes law or interprets a statute as the statement applies to the general public. The term ... does not include ... statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public." Idaho Code § 67–6409 enumerates the general powers of the Authority, including the ability to "adopt and from time to time amend and repeal by-laws and rules and regulations ... to carry into effect the powers and purposes of the authority and the conduct of its business." I.C. § 67–6409(e).

We do not believe this power is indicative of a legislative intent to so transform the Authority into an "agency" and hence limit liability for attorney fees to that imposed under I.C. § 12–117(1). The legislative purpose in creating the Authority was "to provide for a fully adequate supply of governmental facilities at costs that state government can afford." I.C. § 67–6404. Pursuant to that purpose, the Authority has broad powers to contract, invest, manage property and retain employees. None of these powers, however, explicitly or implicitly authorize the Authority to promulgate rules that "implement law" or "interpret[ ] a statute." Its function is to provide a specific service for the state of Idaho at a lower cost than could be accomplished by a private entity. Its interaction with the public is of a different nature than that of a true "state agency" which "determines contested cases" or "prescribes law." Accordingly, we determine that the Authority is a public instrumentality and not an "agency" within the meaning of I.C. § 12–117, making that statute inapplicable.

Having concluded that issue, we turn to whether I.C. § 12–120(3) [4] may be applied to award attorney fees against the Authority if BBH ultimately prevails below. That statute clearly applies to the present suit because it involves a "contract for services" as well as a "commercial transaction," and the parties fall within the statute's definition of "party." The Authority claims that application of I.C. § 12–120(3) would be an unconstitutional impairment of contractual obligations, because although it was enacted in 1970, "contract[s] relating to ... services" and "commercial transaction[s]" were not included until the April 3, 1986 amendment, and the definition of "party" did not include "the state of Idaho or political subdivision[s] thereof" until the March 31, 1987 amendment. We disagree.

Idaho Code § 73–101 provides that no statute "is retroactive, unless expressly so declared." In *Griggs v. Nash*, 116 Idaho 228, 775 P.2d 120 (1989), we adopted the rule established in *Myers v. Vermaas*, 114 Idaho 85, 753 P.2d 296 (Ct.App.1988), that because I.C. § 12–120 provides for a mandatory award of attorney fees to the prevailing party it should not be applied retroactively. In *Myers*, the Court of Appeals reasoned that retrospective application of § 12–120 or any of its relevant amendments would "distort [the] decision-making process" regarding whether to litigate a commercial dispute by altering the costs and benefits of bringing a meritorious claim before the courts. *Id.* at 87, 753 P.2d at 298; *see also DeWils Interiors, Inc. v. Dines*, 106 Idaho 288, 678 P.2d 80 (Ct.App. 1984).

The retroactivity concern is alleviated if application is limited to suits *filed after* the passage of any relevant amendment. This

---

**4.** The current version of I.C. § 12–120(3) reads:
In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.
Idaho Code § 12–120 was also amended in 1988, however, those changes are immaterial to the present action.

Court has emphasized that "the proper focus is upon the time of filing, not the time the cause of action arose." *Ramco v. H–K Contractors, Inc.,* 118 Idaho 108, 113, 794 P.2d 1381, 1386 (1990) *(citing Griggs v. Nash,* 116 Idaho 228, 775 P.2d 120 (1989)). In the present case, suit was brought on July 28, 1987, subsequent to both the 1986 and 1987 amendments; therefore, application of the current version of I.C. § 12–120(3) would not be unconstitutionally retroactive.

We are not persuaded that *Penrose v. Commercial Travelers Ins. Co.,* 75 Idaho 524, 275 P.2d 969 (1954), cited by the Authority, controls our decision. *Penrose* involved an insurance statute which authorized attorney fee awards to policy holders only. This Court barred its application to pre-existing contracts because, in the words of a concurring justice, it "would create a new liability and impose a burden not covered by the terms of the insurance policy." *Id.* at 540, 275 P.2d at 979 (Keeton, J., concurring in part and dissenting in part). Our Court of Appeals has aptly distinguished that statute in *Penrose* from I.C. § 12–120(3): "Idaho Code § 12–120(3) is different. That statute is party-neutral. It mandates fee awards to prevailing parties but does not affect bargaining relationships by designating favored parties. Therefore, the policy rationale of *Penrose* does not apply to this case." *Eriksen v. Blue Cross of Idaho,* 116 Idaho 693, 695, 778 P.2d 815, 817 (Ct.App.1989). As in this case, *Eriksen* involved a contract entered into before the applicable amendment, but where the lawsuit was filed after the amendment. Accordingly, an award of attorney fees under I.C. § 12–120(3) to the prevailing party below is appropriate regardless of the fact that the Agreement was formed prior to the amendments.

 BBH also request attorney fees on appeal pursuant to I.A.R. 41, I.C. § 12–120(3) and § 12–121. The Authority requests fees for its cross-appeal.

An award of attorney fees is allowed on appeal pursuant to I.C. § 12–121 if this Court finds "that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1); *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). We do not find such to be the case here and do not award attorney fees under that section.

Idaho Code § 12–120(3) generally mandates an award of attorney fees to the prevailing party on appeal as well as at trial. *E.g., Spidell v. Jenkins,* 111 Idaho 857, 727 P.2d 1285 (Ct.App.1986). We do not deem either BBH or the Authority to be the prevailing party on appeal, and hence do not award any fees under this statute.

No costs awarded on appeal.

## IV. PREJUDGMENT INTEREST

Finally, an award of prejudgment interest is inappropriate at this point because the damages issues has not yet been concluded.

## CONCLUSION

In summation, we remand to the district court for reconsideration of the Authority's motion for judgment n.o.v. on the issue of damages, and for clarification of the basis or bases for the new trial order. We find no reversible error in the trial court's refusal to give the Authority's requested jury instructions.

BAKES, C.J., JOHNSON and McDEVITT, JJ. and REINHARDT, J. Pro Tem., concur.