188 P.3d 834

Greg OBENDORF and Boyd Gray,
Plaintiffs–Respondents–Cross
Appellants,

v.

TERRA HUG SPRAY COMPANY, INC.,
an Idaho corporation, Defendant,

and

J.R. Simplot Company, a Nevada corpora-
tion, dba Simplot Soilbuilders, Defen-
dant–Appellant–Cross Respondent.

Greg Obendorf and Boyd Gray,
Plaintiffs–Respondents–
Cross Appellants,

v.

Terra Hug Spray Company, Inc., an
Idaho corporation, Defendant–
Appellant–Cross Respondent,

and

J.R. Simplot Company, a Nevada
corporation, dba Simplot
Soilbuilders, Defendant.

Nos. 31195, 31217.

Supreme Court of Idaho,
Boise, February 2008 Term.

May 1, 2008.

Rehearing Denied July 8, 2008.

Cantrill, Skinner, Sullivan & King, LLP, Boise and P. Mark Thompson, Boise, for appellant-cross respondent. J.R. Simplot Company, dba Simplot Soilbuilders. Robert D. Lewis argued.

White Peterson, P.A., Nampa, for respondent-cross appellants Greg Obendorf and Boyd Gray. William Gigray III argued.

HORTON, Justice.

This is a crop loss case. Respondents Greg Obendorf and Boyd Gray brought suit against Appellants J.R. Simplot Company (Simplot) and Terra Hug Spray Company, Inc. (Terra Hug), advancing claims based upon negligence and breach of contract. The jury found in favor of Respondents, awarding $2,435,906 in total damages.[1] The district court thereafter granted Simplot's motion for new trial based on newly discovered evidence. This Court is asked to decide whether the district court properly instructed the jury and whether Simplot is entitled to a new trial on damages. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondents are partners who farmed 162 acres of asparagus outside of Wilder, Idaho. Asparagus is a perennial crop with a productive life in excess of 15 years and is only grown in certain areas with suitable environmental conditions. Respondents sold their asparagus crop to Seneca Foods Corporation (Seneca) for use in the canned food market. At the time of trial, Seneca operated the only major asparagus canning facility in the state of Washington.[2] Seneca's main competitor in the canned asparagus market had previously moved its asparagus canning operations to South America.

1. Terra Hug initially appealed the damage award, however, prior to oral arguments before this Court, Terra Hug settled with Respondents and dismissed its appeal.

2. Seneca previously operated an asparagus canning facility in Parma, Idaho. However, the Parma facility closed in 2001.

Respondents contracted with Simplot to apply herbicides to their fields. Joe Uranga, a field representative for Simplot, met with Respondents and recommended a combination of four herbicides to control various weeds in the asparagus fields. Simplot hired Terra Hug to apply the herbicide mix. Between May 26 and May 28, 1999, Darrin Watson, an employee of Terra Hug, applied the herbicide mix to the fields. During the application, Mr. Watson experienced clogged spray nozzles, which required him to stop and clean the nozzles while in the field. Watson also reported that the mixture had settled materials in it and had the consistency of pancake batter.

A few days after the spraying, the asparagus fields experienced whitening, yellowing, and browning. A Seneca representative inspected the fields and concluded that the damage was due to the misapplication of herbicides. At the end of the growing season, one field, the Van Deusen field, was so badly damaged that Respondents plowed it under and replaced it with corn, a chemically tolerant crop. Based upon the recommendation of a Seneca field representative, Respondents plowed under their remaining asparagus fields after the 2001 growing season.

In March 2002, Respondents filed suit against Simplot and Terra Hug alleging claims for breach of contract, breach of implied warranty, breach of express warranty, and negligence against Simplot and claims for breach of contract and negligence against Terra Hug. A ten-day jury trial was held from May 10 through May 21, 2004. On the tenth day of the trial, the district court made an oral ruling permitting Respondents to amend their complaint to assert a claim based upon negligence per se and including a negligence per se instruction in the jury instructions.

On Friday, May 21, 2004, the jury returned a verdict for Respondents, finding the total damages resulting from Simplot's and Terra Hug's negligence to be $2,435,906. In its consideration of comparative negligence, the jury assigned 85% of the liability to Simplot and 15% of the liability to Terra Hug. On the contract claim, the jury awarded $2,070,520.10 in damages against Simplot and $365,385.90 in damages against Terra Hug. These contract damages exactly mirrored the award of negligence damages after apportionment for the comparative negligence of Simplot and Terra Hug.

On Wednesday, May 19, 2004, two days before the conclusion of the trial, General Mills, Seneca's primary customer of canned asparagus, signed a contract with Sociedad Agricola Viru S.A. (Viru), to fill its canned asparagus needs from Peru. On Monday, May 24, 2004, three days after the conclusion of the trial, General Mills informed Seneca that it would no longer purchase canned asparagus from Seneca. Seneca decided to close the Dayton processing facility the same day.

The parties made a variety of post-trial motions, including Simplot's motion for new trial pursuant to I.R.C.P. 59(a)(4) (newly discovered evidence) and I.R.C.P. 59(a)(5) (excessive damages, appearing to have been given under the influence of passion or prejudice). The district court denied Simplot's motion for new trial based upon the claim of excessive damages, but granted Simplot's motion for a new trial on damages based upon newly discovered evidence. The district court also stayed further proceedings on the motion for a new trial pursuant to I.R.C.P. 62(b), to allow Simplot to take post-trial depositions of General Mills's employees regarding its decision to contract with Viru. Simplot and Respondents timely appealed to this Court.

## II. STANDARD OF REVIEW

### A. Negligence per se.

The standard of review when reviewing jury instructions on appeal requires this Court to determine whether the jury was properly and adequately instructed. Accordingly, we "review the instructions and ascertain whether the instructions, when considered as a whole, fairly and adequately present the issues and state the applicable law." *Ricketts v. Eastern Idaho Equip., Co., Inc.*, 137 Idaho 578, 581, 51 P.3d 392, 395 (2002) (citing *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 76, 910 P.2d 744, 748 (1996)). "Generally, the question whether a

duty exists is a question of law, over which we exercise free review." *Udy v. Custer County,* 136 Idaho 386, 389, 34 P.3d 1069, 1072 (2001). "Negligence per se, which results from the violation of a specific requirement of law or ordinance, is a question of law, over which this Court exercises free review." *O'Guin v. Bingham County,* 142 Idaho 49, 51, 122 P.3d 308, 310 (2005) (citing *Ahles v. Tabor,* 136 Idaho 393, 395, 34 P.3d 1076, 1078 (2001)).

### B. Motion to strike affidavit.

■ This Court reviews a decision by the trial court to admit or exclude evidence under the abuse of discretion standard. *Highland Enterprises., Inc. v. Barker,* 133 Idaho 330, 345, 986 P.2d 996, 1011 (1999) (citing *Morris v. Thomson,* 130 Idaho 138, 144, 937 P.2d 1212, 1218 (1997)). In the case of an incorrect ruling regarding evidence, this Court will grant relief on appeal only if the error affects a substantial right of one of the parties. *See e.g. White v. Mock,* 140 Idaho 882, 891, 104 P.3d 356, 365 (2004) (citing *Wood v. State, Dep't of Health & Welfare,* 127 Idaho 513, 519, 903 P.2d 102, 108 (Ct.App.1995)); I.R.C.P. 61; I.R.E. 103(a).

### C. I.R.C.P. 27(b)—Depositions pending appeal.

■ No Idaho appellate court has addressed the standard of review for decisions involving the application of I.R.C.P. 27(b). We have expressed "our preference for interpreting the Idaho Rules of Civil Procedure in conformance with the interpretation placed upon the same language in the federal rules. That preference is obviously limited to situations in which our rules and the federal rules contain identical language." *Wait v. Leavell Cattle, Inc.,* 136 Idaho 792, 796, 41 P.3d 220, 224 (2001). Although I.R.C.P. 27(b) and F.R.C.P. 27(b) are substantially similar, they do not employ identical language. We have recognized that the control of discovery is a matter committed to the discretion of the trial court. *Bailey v. Sanford,* 139 Idaho 744, 749, 86 P.3d 458, 463 (2004). The federal courts review decisions to permit depositions pending appeal pursuant to F.R.C.P. 27(b)

for an abuse of discretion. *Campbell v. Blodgett,* 982 F.2d 1356, 1358 (9th Cir.1993). Given the similarities between the two rules and our usual deference to decisions of the trial courts in the control of discovery, we conclude that a trial court's decision whether to authorize a deposition pending appeal pursuant to I.R.C.P. 27(b) is subject to review for abuse of discretion.

### D. I.R.C.P. 59(a)(4)—Newly discovered evidence.

■ When considering an appeal from a trial court's ruling on a motion for new trial, this Court applies the abuse of discretion standard. *Bott v. Idaho State Bldg. Auth.,* 122 Idaho 471, 475, 835 P.2d 1282, 1286 (1992). This Court will not disturb a trial court's ruling to grant or deny a motion for a new trial absent a showing of manifest abuse of that discretion. *Id.* Although this Court necessarily must review the evidence, we are not in a position to "weigh" it as the trial court can. *Id.* The focus, instead, is on the process by which the trial court reached its result. *Hughes v. State of Idaho Dept. of Law Enforcement,* 129 Idaho 558, 561, 929 P.2d 120, 123 (1996).

### III. ANALYSIS

This opinion will discuss the following four issues: (1) whether the district court erred when it instructed the jury on negligence per se; (2) whether the district court erred when it declined to strike an affidavit supporting Simplot's motion for a new trial; (3) whether the district court erred when it granted Simplot's motion to conduct depositions pending appeal; and (4) whether the district court erred when it granted Simplot's motion for a new trial pursuant to I.R.C.P. 59(a)(4). Additionally, both parties ask this court for attorney fees on appeal.

### A. The district court did not err when it instructed the jury on negligence per se.

Simplot argues that the district court erred when it allowed Respondents to amend their complaint on the final day of the trial to allege negligence per se and by instructing the jury regarding negligence per se. Sim-

plot challenges the district court's determination that I.C. §§ 22–3420(1) and (2) may serve as the basis for a negligence per se instruction. We will discuss the pleading requirements of negligence per se before turning to the propriety of a negligence per se instruction based upon I.C. § 22–3420.

▮▮▮▮▮ The elements of a common law negligence action are: (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage. *O'Guin,* 142 Idaho at 52, 122 P.3d at 311. It is well established that statutes and administrative regulations may define the applicable standard of care in a negligence action and that violations of such statutes and regulations may constitute negligence per se. *Id.* Establishing negligence per se through a violation of a statute or regulation conclusively establishes the first two elements of a cause of action in negligence. *Id.* " 'Thus, the elements of duty and breach are taken away from the jury.' " *Id.* (quoting *Ahles,* 136 Idaho at 395, 34 P.3d at 1078).

▮▮▮▮▮ Simplot's argument that the district court erred when it instructed the jury on negligence per se is, in part, based upon the premise that a party must separately plead negligence per se from ordinary negligence. Simplot relies on decisions from other states that require a plaintiff to plead a violation of a statute in order to pursue a claim for negligence per se. We are not persuaded by these decisions. Based upon our decision in *Cafferty v. State Dep't of Transp., Div. of Motor Vehicle Services,* 144 Idaho 324, 160 P.3d 763 (2007), we hold that a party is not required to separately plead negligence per se as a theory distinct from ordinary negligence.

In *Cafferty,* the plaintiff brought a cause of action against the State of Idaho, Department of Transportation, Division of Motor Vehicle Services (DMV) for gross negligence. *Id.* at 327, 160 P.3d at 766. The DMV issued a license to a party after he was released from prison after serving his sentence for his eighth conviction for driving under the influence. Shortly after receiving his license and

while driving under the influence of intoxicants, the party was involved in an accident with the plaintiff. The plaintiff's husband died in the accident and the plaintiff and her son were injured. *Id.* at 326, 160 P.3d at 765.

Under the Idaho Tort Claims Act (ITCA), the DMV could only be held liable for issuing the party a license if the DMV's actions were grossly negligent or reckless, willful and wanton. *Id.* at 327, 160 P.3d at 766. The plaintiff argued that the DMV's failure to refuse the party a license under I.C. §§ 49–303(6) or (10) amounted to gross negligence or reckless, willful and wanton conduct. However, the district court concluded that the plaintiff did not adequately plead a cause of action based on these statutes because the plaintiff did not allege a violation of I.C. §§ 49–303(6) or (10) in her complaint. *Id.* at 328, 160 P.3d at 767.

While the plaintiff's complaint did not allege a violation of I.C. §§ 49–303(6) or (10), the complaint did contain allegations that DMV breached its duties, that DMV's conduct was grossly negligent, reckless, willful and wanton, and discussed the harm which might result if the party receiving the license were permitted to operate a motor vehicle upon the roadways of this state. *Id.* at 329, 160 P.3d at 768. We did not require that the plaintiff specifically allege a violation of I.C. §§ 49–303(6) or (10) in her complaint. Rather, we reversed, concluding that plaintiff's complaint's references to duty, negligence and the resultant harm which might occur were sufficient to raise the issue of negligence under I.C. §§ 49–303(6) and (10). *Id.*

▮▮▮▮▮ Although we did not specifically address the issue of negligence per se in *Cafferty,* our analysis of the pleading requirements for a cause of action for purposes of the ITCA is instructive when considering the pleading requirements for negligence per se. As in *Cafferty,* the Respondents did not plead the specific statute (I.C. § 22–3420) in their complaint and only alleged a cause of action based upon negligence. We apply our reasoning in *Cafferty,* and hold that a party is not required to specifically plead negligence per se in their complaint when alleging

a cause of action for ordinary negligence. Therefore, Respondents were not required to amend their complaint as a condition precedent to the district court's consideration of their request that the jury be instructed as to negligence per se.

■■■ This Court has previously held that only jury instructions that are pertinent to the pleadings and the evidence should be given. *Sherwood v. Carter*, 119 Idaho 246, 260, 805 P.2d 452, 466 (1991). We therefore turn to the question whether the district court properly instructed the jury regarding negligence per se.[3] Simplot challenges the district court's determination that it was appropriate to instruct the jury as to the duty of care prescribed by I.C. §§ 22–3420(1) and (2).

> In order to replace a common law duty of care with a duty of care from a statute or regulation, the following elements must be met: (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury.

*O'Guin*, 142 Idaho at 52, 122 P.3d at 311. Simplot challenges the first prong of this test and argues that the required standard of conduct is ambiguous because I.C. §§ 22–3420(1) and (2) provide an exception for "as provided by rule." I.C. § 22–3420 provides in relevant part:

> No person shall:
>> (1) Use a pesticide in a manner inconsistent with its labeling except as provided for by rule.
>> (2) Make pesticide recommendations in a manner inconsistent with its labeling except as provided for by rule.

The statute clearly defines a standard of conduct: no person may use a pesticide[4] or make recommendations for use of a pesticide that is inconsistent with its labeling, except as provided for by rule. Although the statute does provide an exception for "as provided by rule," this exception does not make the prohibited conduct ambiguous. Nothing precluded Simplot from arguing it was shielded from liability because of an exception found within the rules promulgated under the authority granted to the Department of Agriculture by Title 22 of the Idaho Code. We note that Simplot has failed to identify a rule that exempts it from the general statutory duty to comply with pesticide labeling.

■■■ In a similar vein, Simplot argues that it was prevented from presenting a defense relating to a violation of the statutory duty. In the course of the trial, the labels for the four herbicides in question were admitted into evidence. Respondent's experts testified that it was important to comply with labeling requirements and expressed their opinions that certain herbicides had been applied at rates inconsistent with their labeling. In view of the jury's receipt of this

---

3. The district court's Instruction No. 16A to the jury stated:

> There was a certain statute in force in the State of Idaho at the time of the occurrence in question which provided that:
> No person shall:
>> (1) Use a pesticide in a manner inconsistent with its labeling except as provided for by rule.
>> (2) Make pesticide recommendations in a manner inconsistent with its labeling except as provided for by rule.
>> . . .
>> (8) Apply pesticides in a faulty, careless, or negligent manner.
> (I.C. § 22–3420)
> A violation of the statute is negligence.

You are further instructed that for the purposes of this statute, herbicides are included in the definition of pesticide.

4. The statutory definition of "pesticide" clearly includes herbicides. I.C. § 22–3401(23) defines "pesticide" as follows:

> "Pesticide" means but is not limited to (a) any substance or mixture of substances intended to prevent, destroy, control, repel or mitigate any insect, rodent, nematode, snail, slug, fungus, weed and any other form of plant or animal life or virus, except virus or fungus on or in living man or other animal, which is normally considered to be a pest or which the director may declare to be a pest, and (b) any substance or mixture of substances intended to be used as a plant regulator, defoliant or desiccant, and (c) any spray adjuvant.

evidence and Simplot's failure to identify a rule exempting it from the general requirement of adherence to labeling, we cannot agree with Simplot's contention that it was prevented from presenting a defense.

For these reasons, we conclude that the district court did not err when it instructed the jury that a violation of the standard of conduct defined in I.C. §§ 22–3420(1) and (2) was negligence. We turn now to the issues relating to the district court's grant of a new trial as to damages.

### B. The district court did not err when it declined to strike the affidavit of Simplot's counsel in support of motion for new trial.

■ Simplot's attorney, David W. Cantrill, filed an affidavit in support of the motion for new trial within fourteen days after the entry of judgment. The affidavit was based upon news reports of the closure of the Dayton processing facility. Attached to the affidavit was a copy of an online article, dated June 4, 2004, from the Yakima Herald. Respondents moved to strike the affidavit, arguing that an affidavit in support of a motion for a new trial must comply with the evidentiary requirements of the Idaho Rules of Evidence. Respondents argue that Cantrill's affidavit lacked the requisite foundation and constituted inadmissible hearsay in violation of I.R.E. 602 and 801. More specifically, Respondents argue that Cantrill lacked personal knowledge of the information detailed in the newspaper article attached to the affidavit, which reported that General Mills would no longer purchase asparagus from Seneca. Simplot acknowledges that much of the affidavit contains hearsay.

During the hearing on Respondents' motion to strike the affidavit, the district court indicated it would not grant Respondents' motion because it was unaware of any rule or authority concerning the requisites for affidavits outside the summary judgment setting. The district court expressed concern that requiring a party to comply with the rules of evidence may be too restrictive when a motion for a new trial must be served "not later than fourteen (14) days after the entry of the judgment." I.R.C.P. 59(b).

I.R.C.P. 59(c) recognizes that motions for new trial may be based upon affidavits, specifically requiring that "[w]hen a motion for a new trial is based upon affidavits they shall be served with the motion." The rule does not prescribe the contents of affidavits filed in support of, or opposition to, motions for new trial. We must, therefore, determine whether an affidavit filed in support of, or opposition to, a motion for new trial must meet the standards prescribed by the Idaho Rules of Evidence.

■ We have, in the past, applied rules of statutory construction in the interpretation of our rules of civil procedure. *See e.g., Lawrence Warehouse Co. v. Rudio Lumber Co.,* 89 Idaho 389, 396, 405 P.2d 634, 637–38 (1965) (interpreting I.R.C.P. 65(a) and 52(a)). In matters of construction, this Court prefers an interpretation that gives meaning to every word, clause, and sentence. *Robison v. Bateman–Hall Inc.,* 139 Idaho 207, 210, 76 P.3d 951, 954 (2003).

As the district court correctly noted, I.R.C.P. 56(e), governing affidavits in summary judgment proceedings, provides as follows: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." If we were to conclude that every affidavit filed in connection with every motion under the Idaho Rules of Civil Procedure must satisfy the Idaho Rules of Evidence, as suggested by Respondents, the effect would be to render this provision of I.R.C.P. 56(e) mere surplusage.

■ We are mindful, as was the district court, of the time constraints imposed by I.R.C.P. 59(b). We are also mindful of the admonition, contained in I.R.C.P. 1(a), that the rules of civil procedure "shall be liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding." For these reasons, we conclude that an affidavit filed in connection with a motion for new trial need not meet the standards of admissibility prescribed by the

Idaho Rules of Evidence.[5] We therefore conclude that the district court did not err when it denied Respondents' motion to strike the affidavit of counsel.[6]

**C. The district court did not abuse its discretion when it permitted Simplot to conduct post-trial discovery.**

■ Respondents argue that the district court erred when it permitted Simplot to conduct post-trial discovery pursuant to I.R.C.P. 27(b) before ruling on the motion for a new trial. I.R.C.P. 27(b) provides:

> If an appeal has been taken from a judgment of a district court or before the taking of an appeal if the time therefor has not expired, the district court in which the judgment was rendered may allow the taking of the depositions of witnesses to perpetuate their testimony for use in the event of further proceedings in the district court. In such case the party who desires to perpetuate the testimony may make a motion in the district court for leave to take the depositions, upon the same notice and service thereof as if the action was pending in the district court. The motion shall show (1) the names and addresses of persons to be examined and the substance of the testimony which the party expects to elicit from each; (2) the reasons for perpetuating their testimony. If the court finds that the perpetuation of the testimony is proper to avoid a failure or delay of justice, it may make an order allowing the depositions to be taken and may make orders of the character provided for by Rules 34 and 35, and thereupon the depositions may be taken and used in the same manner and under the same conditions as are prescribed in these rules for depositions taken in actions pending in the district court.

The district court stayed further proceedings on the motion for a new trial based upon newly discovered evidence to allow Simplot to conduct additional discovery. After Simplot hired a law firm in Minneapolis to help depose General Mills employees and issued subpoenas, counsel for Respondents sent a letter to counsel for Simplot indicating their opinion that post-trial discovery was not possible without proceeding under I.R.C.P. 27(b). Simplot subsequently filed a motion pursuant to I.R.C.P. 27(b) to avoid any delay in conducting the depositions. Respondents objected to this motion.

Prior to Simplot lodging the I.R.C.P. 27(b) motion, the district court stayed proceedings on the motion for a new trial in order to allow Simplot to pursue further discovery. The district court stated:

> The significance of this, though, is not one so much of liability as it is on damages. And I just think that [Simplot's] request to stay the proceeding under Rule 62(b), for me to deny that opportunity, based on this information to allow it to be discovered further, would really be just flaunting almost the potential for injustice.

I.R.C.P. 62(b) states the following:

> Stay on Motion for New Trial or for Judgment. In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial or to alter or amend a judgment made pursuant to Rule 59, or of a motion for relief from a judgment or order made pursuant to Rule 60, or of a motion for judgment in accordance with a motion for a directed verdict made pursuant to Rule 50, or of a motion for amendment to the findings or for additional findings made pursuant to Rule 52(b).

This Court has not had an occasion to address I.R.C.P. 62(b). The rule expressly states that a stay of proceedings may be granted by the district court "[i]n its discre-

---

5. We do not suggest that the trial court must blindly accept every fact or conclusion advanced in an affidavit in support of a new trial that would not be admissible in evidence. To the contrary, the trial court may consider evidentiary deficiencies in evaluating the weight, if any, to be given an affidavit that would not be admissible in evidence.

6. Although not a basis for our decision, we observe that the district court primarily considered the affidavit for the purpose of granting Simplot the opportunity to conduct discovery in order to present admissible evidence relevant to the motion for new trial.

tion." We find no abuse of discretion in the district court's determination to permit post-trial discovery before ruling on Simplot's motion for new trial based on newly discovered evidence. General Mills would not willingly disclose any information about its contract with Viru at the time the post-trial motions came before the district court. Given the possibility for an unjust result, the district court stayed proceedings on the motion for a new trial to allow Simplot to depose employees of General Mills. After this ruling, Respondents attempted to characterize the issue as falling under I.R.C.P. 27(b) because those motions are only allowed upon a showing of the need to preserve evidence. 8 CHARLES ALAN WRIGHT ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 2076 (2d. ed. 2007).

In our view, Simplot's request to conduct the post-trial deposition did not relate to preservation of evidence during the pendency of an appeal. Thus, the body of case law relating to the federal counterpart of I.R.C.P. 27(b) is not persuasive. Rather, we view the trial court's decision as an exercise of its broad discretion in the control of discovery. I.R.C.P. 30(f)(4)(B) specifically recognizes that depositions may be utilized in connection with post-trial motions. We conclude that the district court did not abuse that discretion when it permitted post-trial depositions related to the motion for new trial.

**D. The district court did not abuse its discretion when it granted Simplot's motion for a new trial on damages based upon newly discovered evidence pursuant to I.R.C.P. 59(a)(4).**

■ I.R.C.P. 59(a)(4) authorizes a trial court to grant a new trial, under limited circumstances, when it is shown that there is newly discovered evidence. The rule provides as follows:

A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:

. . . .

4. Newly discovered evidence, material for the party making the application,

which the party could not, with reasonable diligence, have discovered and produced at the trial.

I.R.C.P. 59(a)(4). To obtain a new trial on grounds of newly discovered evidence, it must be shown that the evidence: (1) is such as will probably change the result if a new trial is granted; (2) has been discovered since the trial; (3) could not have been discovered before the trial by the exercise of due diligence; (4) is material to the issues; and (5) is not merely cumulative or impeaching. *Hanf v. Syringa Realty, Inc.,* 120 Idaho 364, 368, 816 P.2d 320, 324 (1991).

Respondents argue that: (1) Seneca's decision to close the Dayton processing facility occurred after the completion of the trial and does not qualify as newly discovered evidence; (2) the evidence will not likely produce a different result in a new trial; (3) the district court failed to consider affidavits submitted by Respondents that demonstrate that Respondents will have alternative markets at better prices than offered by Seneca commencing in the crop year 2005; (4) the evidence is cumulative with regard to testimony at trial concerning the markets available to Respondents for their crop after 2005; and (5) Simplot has not demonstrated reasonable diligence.

■ Respondents first argue that Seneca's decision to close the Dayton processing facility occurred after the conclusion of trial and is not newly discovered evidence. Newly discovered evidence must be information in existence at the time of trial but not discoverable with due diligence. *Savage Lateral Ditch Users Ass'n v. Pulley,* 125 Idaho 237, 245, 869 P.2d 554, 562 (1993). While the *Savage* case dealt with newly discovered evidence under I.R.C.P. 60(b)(2), the standard is equally applicable to cases involving newly discovered evidence under I.R.C.P. 59(a)(4). *Compass Tech., Inc. v. Tseng Laboratories, Inc.,* 71 F.3d 1125, 1130 (3rd Cir.1995). There are two significant events related to this question: (1) General Mills's decision to end its relationship with Seneca and purchase asparagus from Viru; and (2) Seneca's decision to close the Dayton plant and curtail its asparagus purchases. One occurred be-

fore the conclusion of trial and one occurred after the trial was completed. We conclude that the material event is General Mills's decision to sign a contract with Viru on Wednesday, May 19, 2004, which occurred before the conclusion of trial.

Newly discovered evidence is most useful when it "calls into question the validity of the judgment by directly refuting the underpinnings of the theory which prevailed." 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE 2859 (2d. ed.2007). The district court determined that General Mills's decision to stop purchasing asparagus from Seneca set in motion a chain of events that significantly affected Respondents' ability to sell their asparagus and thus, related to the award of damages. Respondents' damage award was based on the premise that the asparagus market would remain static for the life of Respondents' asparagus crop and General Mills would continue to purchase asparagus grown in Washington. General Mills was the primary purchaser of Seneca's processed asparagus and the only remaining major purchaser of processed asparagus produced in the state of Washington. General Mills's decision to fill its asparagus needs from Peru significantly impacted the demand side of the asparagus market in Washington and Idaho. We conclude that the district court did not abuse its discretion when it determined that General Mill's decision, which occurred before the conclusion of the trial, constituted newly discovered evidence.

■ Respondents argue that even if the evidence qualifies as newly discovered, it will probably not result in a different outcome if a new trial is granted. Respondents assert that the district court failed to consider Respondents' evidence regarding the availability of alternative markets for their asparagus. Respondents' expert, Dr. Walker, testified that he based his damage estimates of future losses on a sixteen-year-crop-life and the continued existence of the processed asparagus market in Washington. The district court noted that following the 2005 closure of the Dayton plant, eleven years of Respondent's expected asparagus production would remain and that [e]vidence of the impact on the

market is necessary to ensure an accurate calculation of [Respondents'] future loss estimates. Respondents argue that they have demonstrated the existence of alternative markets for their asparagus for the remaining eleven years of the expected crop life.

The affidavits submitted by Respondents, however, were lodged with the district court before the Dayton plant closed. The district court concluded that the alternative markets evidence presented in Respondents' affidavits did not reflect the impact of all of the Washington asparagus growers who also would be looking for alternative markets for their crops and what effect this would have on the market price for asparagus. The record indicates the closure of the Dayton plant was significant to the Washington asparagus market. General Mills purchased over 90% of the asparagus processed and canned at the Dayton plant. The Dayton processing plant was the last major asparagus canning facility operating in the state of Washington. The Dayton plant processed 28 million pounds of asparagus each year, and half of all asparagus grown in Washington was sold to the Dayton plant. Given this substantial evidence of a supply-demand imbalance in the regional asparagus market stemming from General Mill's decision, we conclude that the district court did not err when it concluded the newly discovered evidence would probably lead to a different result in the event of a new trial.

■ Respondents also argue that Simplot has not demonstrated that the newly discovered evidence is not merely cumulative or impeaching. The district court concluded that while there was testimony at trial concerning the developing asparagus market in Peru, there was no evidence presented at trial that General Mills was going to contract with Viru, and therefore the newly discovered evidence was not cumulative. We can find no evidence in the record that indicates General Mills was going to contract with Viru. Therefore, we conclude that the district court did not err when it determined the newly discovered evidence was not merely cumulative.

Additionally, Respondents assert that the newly discovered evidence was being used merely to impeach the testimony of Dr. Walker's calculations of damages. The district court rejected this argument, concluding that General Mills's decision to transfer its future purchase of asparagus to Peru would have been a major factor for the jury to consider with regard to the future asparagus market. We can find no error in the district courts determination that this evidence was not merely impeaching.

Finally, Respondents argue that Simplot could have discovered the existence of General Mills's contract with Viru before the end of the trial by the exercise of due diligence. The district court found that the evidence in question could not have been discovered prior to the end of the trial in the exercise of due diligence. The record reflects that General Mills did not release information about the contract with Viru even after notifying Seneca of its decision. Although General Mills released information to the public regarding its decision to purchase asparagus from South America, it refused to reveal its supplier for competitive reasons. Prior to signing the contract with Viru, General Mills did not disclose to anyone outside the company that it would stop purchasing asparagus from Seneca. In post-trial proceedings, General Mills limited the scope of the depositions of its employees by Simplot's counsel and refused to release the details of its contract with Viru. Under these circumstances, we are unable to conclude that the district court erred when it found that Simplot could not have discovered evidence of General Mills's contract with Viru prior to the end of the trial by the exercise of due diligence.

In view of the foregoing, we conclude that the district court did not abuse its discretion when it granted Simplot's motion for new trial based upon newly discovered evidence pursuant to I.R.C.P. 59(a)(4). In light of this determination, we do not address Simplot's claim that the district court erred when it denied Simplot's motion for new trial based upon the claim of excessive damages appearing to have been given under the influence of passion or prejudice, pursuant to I.R.C.P. 59(a)(5).

Although not an issue raised by the parties on appeal, we note that the district court stated that the "new trial will be limited to the issue of the [Respondents'] future economic loss." The district court may not limit the new trial to the narrow issue of Respondents' future economic losses. In this case, the jury's special verdicts did not allocate past and future losses. Rather, their verdicts simply reflected the total damages sustained by Respondents as a result of Simplot's and Terra Hug's negligence and breaches of contract. For this reason, all issues of damages must be tried anew.

**E. Neither party is permitted an award of attorney fees on appeal.**

Both parties appealed rulings of the district court. Neither party prevailed upon the issues presented in their appeals, but each party prevailed as the respondent or cross-respondent, respectively. Therefore, we conclude that neither party is entitled to an award of attorney fees on appeal.

## IV. CONCLUSION

We affirm the decision of the district court and remand the case for a new trial on damages.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES concur.

